THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOROTHY HESTER, Defendant-Appellant.

First District (5th Division) No. 85—2222

Opinion filed December 23, 1988.—Modified opinion filed January 27, 1989.

LORENZ, P.J., dissenting.

Charles G. Murphy and Law Offices of Thomas Peters, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Thomas P. Needham, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:

Defendant, Dorothy Hester, was charged in a one-count information with reckless homicide (Ill. Rev. Stat. 1987, ch. 38, par. 9—

3(a)). Although the record before us on this appeal clearly establishes that she was also charged with driving a vehicle while under the influence of alcohol (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)), that charge is not contained in this record.[1] A jury found the defendant guilty of both charges and she was sentenced to 28 months' imprisonment in the Illinois Department of Corrections on the reckless homicide offense and a concurrent sentence of 364 days' imprisonment on the offense of driving a vehicle while under the influence of alcohol. On appeal the defendant contends for reversal that the trial court erroneously instructed the jury that it could presume that the defendant was under the influence of alcohol and that her 28 months' imprisonment sentence for the reckless homicide offense is excessive and an abuse of the trial court's sentencing discretion.

■ Reckless homicide is defined in section 9—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(a)) as follows:

"A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter *if his acts* whether lawful or unlawful *which cause the death* are such as are likely to cause death or great bodily harm to some individual, and *he performs them recklessly,* except *in cases in which the cause of the death consists of the driving of a motor vehicle,* in which case *the person commits reckless homicide."* (Emphasis added.)

The one-count reckless homicide information against the defendant alleged:

"That on July 4th 1984 in Cook County, Illinois Dorothy R. Hester committed the offense of reckless homicide in that she, unintentionally and without lawful justification, while driving a

---

[1] The record on appeal consists of two separate volumes. The pages of one volume, filed herein on February 6, 1986, are renumbered 1 through 720. The pages of what is labeled "supplemental record volume one (1) of one (1)," filed herein on June 12, 1986, are renumbered 1 through 592. The pages of these two volumes are not in the chronological sequence of the dates on which the proceedings occurred in the trial court. Moreover, neither volume contains an index or a table of contents of (1) the charges; (2) the People's or defense witnesses; (3) their direct or cross-examination; (4) the pleadings; (5) opening statements or closing arguments; (6) motions; (7) jury instructions or verdicts; (8) the judgments and sentences of (9) the pretrial; (10) trial; or (11) post-trial proceedings; or (12) the dates thereof. This court should not be needlessly burdened with having to tediously search through an appeal record such as this in order to determine the issues raised on appeal, as was required in this case. The trial court clerk and the attorney responsible for the preparation and filing of the record on appeal are expected to fulfill their responsibility to prepare and file a proper record on appeal.

motor vehicle, to wit: an automobile, *recklessly performed acts in such a manner as was likely to cause death or great bodily harm to some individual and such acts caused the death of Diane Streetz, in violation of Chapter 38, Section 9—3—A Illinois Revised Statutes \*\*\*.*" (Emphasis added.)

The reckless homicide information did not specify or particularize the acts that the defendant allegedly *recklessly performed* while driving the motor vehicle. Nor did the information allege or otherwise designate the manner in which the acts were recklessly performed.

■■ It is provided in article I, section 8, of the Illinois Constitution that, "In criminal prosecutions, the accused shall have the right \*\*\* to demand the nature and cause of the accusation \*\*\*." (Ill. Const. 1970, art. I, §8.) Article I, section 2, of the Illinois Constitution provides that, "No person shall be deprived of life, liberty or property without due process of law \*\*\*." (Ill. Const. 1970, art. I, §2.) Section 114—1(a)(8) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 114—1(a)(8)) states that upon the written motion of the defendant made prior to trial, the court may. dismiss an information on the ground that "[t]he charges does not state an offense." No motion was made attacking the constitutional or statutory validity of the reckless homicide information on the grounds that it failed to allege the *acts* that the defendant *recklessly performed* or the manner in which such acts were recklessly performed.

■ Section 114—2(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1987, ch. 38, par. 114—2(a)), provides that "a written motion for a bill of particulars \*\*\* shall specify the particulars of the offense necessary to enable the defendant to prepare his defense." Under this statutory provision defendant filed an exhaustive motion for a bill of particulars for (1) the exact time and date of the occurrence; (2) the exact street address and physical description of the location of the occurrence; (3) a list of occurrence witnesses and their statements; (4) a list of physical property; (5) reports or statements of experts; (6) a list of identification witnesses; (7) witnesses favorable to the defense; and (8) results of any electronic surveillances and. for other similar information. No motion for a bill of particulars was filed, however, to specify or particularize the *acts* which the defendant allegedly *recklessly performed,* or the manner in which such acts were recklessly performed.

■ It is provided in section 9—3(b) (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(b)) that "[i]n cases involving reckless homicide, being under the influence of alcohol \*\*\* at the time of the alleged violation shall be prima facie evidence of a reckless act." But as stated, the reckless

homicide information did not allege that the reckless act that the defendant committed was that she drove a vehicle while she was under the influence of alcohol.

It is quite clear, however, from the prosecutor's numerous comments throughout the entire trial court proceedings that the prosecutor intended for the jury to rely on the State's evidence of the defendant driving a vehicle while she was under the influence of alcohol as the defendant's reckless act in the alleged reckless homicide offense. It is equally apparent that the jury did so. The defendant's reckless act allegation's deficiency and the ambiguity of the reckless homicide charge were clarified in the prosecutor's opening statement to the jury, during which the prosecutor repeatedly informed the jury that the concentration of alcohol in the defendant's breath when she was arrested was 0.20, from which, the prosecutor stated, the jury should presume that the defendant was under the influence of alcohol.

The trial court's instructions to the jury on reckless homicide, tendered by the prosecutor, do not refute that the prosecutor and the jury relied on the defendant's driving a vehicle while under the influence of alcohol as the defendant's reckless act in the alleged reckless homicide offense. After instructing the jury that "a person acts recklessly when she consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow and such disregard constituted a gross deviation from the standard of care which a reasonable person would exercise in the situation," the trial court then instructed the jury that "a person commits the offense of reckless homicide when she unintentionally causes the death of an individual by driving a motor vehicle recklessly and in a manner likely to cause death or great bodily harm." The trial court followed with a reckless homicide issue instruction, as follows:

"To sustain the charge of reckless homicide, the State must prove the following propositions:

First: That the defendant caused the death of Diane Streetz by driving a motor vehicle; and

Second: That the defendant drove the motor vehicle recklessly; and

Third: That the defendant drove the motor vehicle in a manner likely to cause death or great bodily harm.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a

reasonable doubt, you should find the defendant not guilty."

Each of these foregoing reckless homicide jury instructions was tendered by the State, but neither identified the reckless act or acts of the defendant on which the State relied.

The prosecutor devoted practically all of his 32-page and 43-minute opening and closing arguments to the jury on the evidence of the defendant driving while under the influence of alcohol, during which the only remarks he made about the reckless homicide charge or the evidence in support thereof were as follows:

"I'd submit the evidence in this case is overwhelmingly sufficient and calls out and cries out for the conviction of Dorothy Hester for driving under the influence of alcohol and reckless homicide.

\*\*\* [W]e are alleging that she violated two statutes that are in effect in the State of Illinois. One's called driving under the influence; one's called reckless homicide. And Dorothy Hester, by her plea of not guilty, \*\*\* has said, no, she's not guilty; and you have to decide whether she is or not.

\* \* \*

I would urge you, ladies and gentlemen, to find her guilty, to vote for verdict of guilty of reckless homicide and of driving under the influence, because we've proved that.

\* \* \*

Ladies and gentlemen, please, when you retire, remember your duty as jurors. Consider the facts, \*\*\* and find Dorothy Hester guilty of reckless homicide and driving under the influence."

In the prosecutor's final closing argument, he again reiterated his reliance on the defendant's driving while under the influence of alcohol as the defendant's reckless conduct in support of the reckless homicide charge, for the prosecutor then argued:

"Dorothy Hester transformed that 1980 Bonneville into a deadly, unguided missile when she launched it by turning the ignition key and driving away; and here's where we, really, get to the essence of the reckless homicide charge. What is reckless homicide? \*\*\* Is it recklessness? \*\*\* Well, you won't have any trouble determining whether she was reckless because I will point out that the defendant did three—not just one, not two, but three—very important things, each and every one of them alone was reckless. I'll enumerate. The first reckless act of the defendant, \*\*\* driving her car in this reckless manner and a drunken state, was the fact that she drove to the carnival and

became drunk. \*\*\* [S]he was extremely intoxicated at the time of this accident and that means that before she got in her car she was extremely intoxicated.

Now, what reasonable and prudent person drives their car to another location, knowing that they've been drinking excessively, and drink some more?

So, the first reckless act of the defendant was to drive her car to another location and drink some more, because she knew she'd have to drive the car home, or should. First reckless act was getting drunk in the first place knowing that she would be driving a car.

We do know that she was highly intoxicated. Not only because of her obvious lack of ability to control this car for no other explainable reason.

\* \* \*

But if Dorothy Hester had just gotten drunk, Diane Streetz wouldn't be dead right now. She required the second and very crucial reckless act, and that was in the defendant's decision to drive despite her impaired condition.

The defendant did not have to drive home. She already committed the reckless act of getting drunk at the carnival, knowing she should drive home, but she didn't have to drive home. \*\*\* [H]er getting in the car and driving it was an unjustifiable risk and the defendant's decision to drive in her impaired condition \*\*\* was particularly reckless because \*\*\* the streets were relatively littered with people. \*\*\*

Ah, but here's where the third and final element of recklessness, really, comes in and this is really what it boils down to. \*\*\*

However, a reasonable and prudent and cautious person, knowing that they've had things to drink, is going to, hopefully, drive their car in a slow and cautious fashion."

Subsequently, in opposition to the defendant's motion for a new trial, the prosecutor again defined to the trial court the defendant's acts upon which he relied as reckless conduct, as follows:

"[T]he Defendant was guilty of not just one reckless act, but was guilty of at least three separate and distinguishable reckless acts.

The first being, your Honor, after having driven to the carnival, the Defendant drank to the point of extreme intoxication knowing that she was going to have to drive that same vehicle home.

\* \* \*

So the Defendant's first reckless act was driving to the carnival either in a state of intoxication or driving to the carnival, becoming intoxicated knowing that she was going to have to drive the same vehicle back home.

It was at that point she had a chance to decide not to have that drink, that the safety and lives of others weren't as important as her enjoyment in drinking. But she didn't do that, and that was reckless.

The second thing that the Defendant did which was reckless was that she drove her vehicle in the condition that she had placed herself in and that she didn't have to. \*\*\* [T]he Defendant was not alone. She had friends with her \*\*\*. Friends that could have driven her home. There was no reason that the Defendant had to drive her vehicle home.

\* \* \*

And the third factor, your Honor, \*\*\* the recklessness which the Defendant exhibited, is that having decided to drive her vehicle, \*\*\* in the condition that she had placed herself in, double the legal intoxication level, \*\*\* and despite the fact that the Defendant was in that condition, she decided to drive any way."

It is undeniably apparent from the foregoing that the *"recklessly performed act*[ ]*"* of the defendant upon which the prosecutor relied to prove the alleged reckless homicide offense was the defendant driving her car while she was under the influence of alcohol.

As beforestated, the charge against the defendant of driving while under the influence of alcohol is not contained in the record on appeal. The prosecutor, however, obviously relied on the defendant driving her vehicle while under the influence of alcohol as the *"recklessly performed act[ ]"* on the trial of the reckless homicide offense, even though the State's simultaneous prosecution and trial of the defendant on the separate offense of driving while under the influence of alcohol may have presented a double jeopardy, constitutional question under article 1, section 10, of the Illinois Constitution, which provides, "No person shall be compelled in a criminal case to \*\*\* be twice put in jeopardy for the same offense." Ill. Const. 1970, art. I, §10.

There is no dispute that the defendant was charged with, tried on and found guilty by the jury of driving a vehicle while under the influence of alcohol, even though, as stated, that charge is not contained in the appeal record before us.

■ Driving a vehicle while under the influence of alcohol is pro-

hibited by section 11—501(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)), and it is a Class A misdemeanor (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(c)). It is apparent from the appeal record before us that the defendant was also simultaneously tried before the jury on the reckless homicide information. The trial evidence established the following.

The defendant, Dorothy Hester, was 47 years of age and lived with her husband in a small house in Streamwood, Illinois. She had one daughter by a previous marriage, and she had reared her niece and nephew after their mother, the defendant's twin sister, died at an early age. The defendant was a five-year employee as a cashier and patient assistant to the pharmacist at Mark Drugs in Streamwood.

On July 4, 1984, the defendant and her husband had friends at their home for a cookout, during which, from about 5 p.m., they watched television, conversed and ate hamburgers, hot dogs and potato salad. Some, but not all, of the guests had beer with their food.

Around 7 p.m., the defendant went with her friends to a nearby carnival, at which Elisa Pack, the defendant's co-worker at Mark Drugs, was present. Pack and the defendant conversed, during which the defendant held Pack's newborn child. According to Mrs. Pack, the defendant did not appear to have had anything to drink and she did not at all appear to be intoxicated.

Harry Norred, a defense witness, testified that he was a neighbor of the defendant and that he saw the defendant with another neighbor's children at the carnival on July 4, about 7:30 p.m., bought her a beer and talked with her for about 20 minutes, when he left the beer garden with the children to take them on the carnival rides. Norred related that he later saw the defendant with the children a second time at the carnival, and again a third time about 9:30 or 10 o'clock, when she was leaving the carnival to go home, at which time they talked further. Norred stated that there was nothing unusual about the defendant, her speech, standing or her walking and that the defendant was not intoxicated.

The defendant walked across a field past several police officers to her car. Her car had a minor mechanical problem and it took the defendant 10 to 15 minutes before she could get it started to drive from the carnival parking area.

The defendant proceeded homeward from the carnival on a road where the posted speed limit was 30 miles per hour. About a hundred people were walking on this road. The defendant testified that as she entered a curve in the road, her car "went bump," that she "tried to steer it, tried to correct it *** wrestled with the steering wheel ***

trying to steer the car," which kept pulling to her right. She stated that the steering wheel was spinning and she was unable to control it. Her car struck a large boulder in the middle of the median. The State's witnesses and the defendant testified that the defendant desperately tried to correct her car's errant direction by sharply turning the steering wheel. Only one witness estimated that the defendant was exceeding the 30-mile-per-hour speed limit. He estimated the speed of defendant's car at around 50 miles per hour, contrary to the defendant's estimate of around 30 miles per hour. The driver's side of the car lifted off the ground and caused the car to bounce and careen off to the right. When the car bounced it caused the defendant to strike her head on the interior roof of the car. Her glasses broke and fell off. Since she was 11 years old the defendant had had acute astigmatism, myopic and chronic conjunctivitis in one eye, out of which she could not see without her glasses. The defendant's car struck and killed Diane Streetz, a pedestrian on the roadway. The defendant's car eventually struck two cars in an adjacent parking lot, where it came to rest. It was estimated that about five seconds elapsed between the time when the defendant's car first hit the curb and when it finally came to a complete stop.

Three witnesses to the accident testified on behalf of the State that they immediately went over to the defendant's car when it came to rest. Each of them observed the defendant, heard her speak, detected an odor of alcohol on her breath and was of the opinion that she was under the influence of alcohol.

Streamwood police officer Brockmeyer and a female officer arrived at the accident scene within minutes after the accident occurred. Officer Brockmeyer, a State witness, was also of the opinion that the defendant was under the influence of alcohol. The female officer who arrived at the scene with Officer Brockmeyer, however, was not called as a witness by the State.

The defendant contends on this appeal that the trial court improperly instructed the jury that it could presume that the defendant was under the influence of alcohol. This instruction is later set forth and discussed herein in detail. The trial evidence on which this presumption instruction was given was as follows.

While Officer Brockmeyer drove the defendant from the accident scene to the police station, Brockmeyer informed the defendant that she would be requested to take a breathalyzer test, and at the police station the defendant agreed to take the breathalyzer test.

Officer Brockmeyer testified that in January 1984, he took and passed a course at the University of Illinois Police Training Institute,

under the supervision of the Illinois Department of Public Health, on how to operate the breathalyzer machine; that he passed the test at the completion of the course and became a licensed certified breathalyzer operator and that he had administered approximately 100 breathalyzer tests.

Officer Brockmeyer further testified on direct examination that the breathalyzer machine he used to measure the level of alcohol in the defendant's system was a Smith and Wesson 1000, approved by the Illinois Department of Public Health, an agency which regulates the type of machine that may be used by the Illinois police departments. Brockmeyer related that following the procedures and standards specified by the Department of Public Health and the Smith and Wesson 1000 manufacturer, he administered a breathalyzer test to the defendant at 11:05 p.m. Brockmeyer was then asked, and answered:

"Q. What is the result of that?

A. .20.

Q. Officer, are you familiar with the legal presumption under the State of Illinois with regard to the percentage of blood-alcohol as determined by the breathalizer machine?

A. Yes, I am.

Q. What are those presumptions?

A. *** [A]ny time you have .10 or above they're presumed intoxicated."

On cross-examination, Officer Brockmeyer admitted that he took the ampules he used for the test in the breathalyzer machine from a nonrefrigerated cabinet, that he could not recall how old the ampules were and that he did not wash his hands before inserting the ampules into the machine; nor did he wear gloves or wipe the ampules with a lint-free cloth.

The defendant maintains that the Smith and Wesson breathalyzer machine is no longer produced, in part, because of inaccuracies and flaws in the machine; that the Smith and Wesson manufacturer has produced a newer, more accurate machine which uses a different method to measure alcohol content and that the machine Officer Brockmeyer used has fallen into disrepute and is banned in some jurisdictions.

The defendant testified that she had a beer with her dinner meal at her home about 5 or 5:30 p.m., that she had another beer and a half at the carnival later that evening, between 7:30 and 9 p.m., that she had no other alcoholic beverages that day and that she was not intoxicated. She related that as a result of her being tossed about in the car and hitting her head several times on the roof of the car, her

teeth were loose for two weeks and she received a cut inside her upper lip. The defendant further testified that she daily took Tagamet, a prescription drug for her ulcer, and Dilantin, an antispasmadic prescription drug, and that she had taken these medications for five years.

Gil Sapir was called as an expert witness by the defendant. He testified that he was trained and certified on the newer Smith and Wesson breathalyzer machine, which required his complete knowledge and understanding of the older machine that Officer Brockmeyer used in testing the defendant. Sapir testified that Smith and Wesson advised and that scientific procedure dictated that the ampules used in the testing be kept under refrigeration, that the tester should wash his hands, wear gloves and wipe the ampules with a lint-free glove, and that if these procedures were not followed, error in the test results were likely. Because the defendant was on medication, had a severe ulcer and was a lifelong smoker when she took the breathalyzer test, Sapir testified the defendant's ability to exhale air from deep in her lungs was impaired. Sapir also testified that because the older Smith and Wesson machine Brockmeyer used measured alcohol to oxygen rates in the breath, any condition which reduced the ability to exhale deep lung air reduced the accuracy of the test results. Sapir concluded that the defendant's test result was not reliable because the defendant smoked, took ulcer medication, Brockmeyer did not follow proper pretest procedures, and the breathalyzer machine Brockmeyer used was inherently flawed.

John Dorko, a rebuttal witness for the State, testified that for 13 years he had been employed by the Illinois Department of Mental Health as a breathalyzer inspector and that he was also licensed to operate and repair breathalyzer machines, the Smith and Wesson 1000 being the most widely used breathalyzer machine in Illinois, and that he tested and inspected the Streamwood police department breathalyzer machine and certified it as accurate on July 3, 1984, the day before it was used by Officer Brockmeyer to test the defendant.

Over the defendant's objection, the jury was instructed that it could presume that the defendant was under the influence of alcohol if it found that the defendant's breathalyzer test results were .10 or more. The defendant argues that it was error for the court not to have also instructed the jury that it had to find beyond a reasonable doubt that the defendant's test result was .10 or more before it could presume that she was under the influence of alcohol. The defendant urges that the given jury instruction authorized the presumption of a necessary element of the State's case without advising the jury on the

required degree of proof of the condition or fact upon which the presumption was predicated and that the presumption instruction as given therefore erroneously reduced the State's burden of proof from beyond a reasonable doubt.

Before setting forth or further discussing the instruction which the trial court gave the jury on the presumption that the defendant was under the influence of alcohol, we again note the various statutory prohibitions against driving while under the influence of alcohol and the presumption created by the statute. Sections 11—501(a)(1) and (a)(2) (Ill. Rev. Stat. 1987, ch. 95½, pars. 11—501(a)(1), (a)(2)) provide:

"A person shall not drive or be in actual physical control of any vehicle within this State while:

1. The alcohol concentration in such person's blood or breath is 0.10 or more based on the definition of blood and breath units in Section 11—501.2;

2. Under the influence of alcohol."

Thus, the two essential elements of the offense of driving while under the influence of alcohol are (1) driving a vehicle; (2) while the alcohol concentration in the driver's blood or breath is 0.10 or more; or (3) while the person is under the influence of alcohol. It is clear from the record on appeal before us that the defendant was not charged with driving a vehicle while the alcohol concentration in her breath was 0.10 or more under subparagraph one. Rather, the defendant was charged with driving a vehicle "while under the influence of alcohol," under subparagraph two.

Section 11—501.2 provides, *inter alia,* that during a criminal trial for driving a vehicle while under the influence of alcohol, the test result of the concentration of alcohol in the person's blood or breath as determined by analysis of the person's blood or breath shall be admissible.

It is provided in section 11—501.2(a)(5) that "alcohol concentration shall mean either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." Section 11—501.2(b) states that during a criminal trial for driving a vehicle while under the influence of alcohol:

"[T]he concentration of alcohol in the person's blood or breath *** as shown by analysis of the person's blood, urine, breath *** *shall give rise to the following presumptions*:

* * *

3. If there was at that time *an alcohol concentration of 0.10 or more, it shall be presumed that the person was under the in-*

*fluence of alcohol."* (Emphasis added.) Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2(b).

 As previously stated, the reckless homicide statute provides that being under the influence of alcohol at the time the alleged reckless homicide occurred shall be *prima facie* evidence of a reckless act. The reckless homicide statute (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(c)(1)) also provides:

"For the purposes of this Section, a person shall be considered to be under the influence of alcohol or other drugs while:

1. The alcohol concentration in such person's blood or breath is 0.10 or more based on the definition of blood and breath units in section 11—501.2 of the Illinois Vehicle Code."[2]

The legal presumption of being under the influence of alcohol when there is an alcohol concentration of 0.10 in the person's breath is a creature of the statute and the statute makes the presumption unequivocally mandatory: "[T]he concentration of alcohol in the person's *** breath *** *shall* give rise to the following presumptions: *** If there was *** an alcohol *concentration of 0.10 or more, it shall be presumed that the person was under the influence of alcohol."* (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2(b)(3).) Thus, this statute directed that upon the jury finding that the concentration of alcohol on the defendant's breath was 0.10 or more, the jury shall presume that the defendant committed a necessary element of the offense, *i.e.,* the defendant was under the influence of alcohol. Constitutional due process therefore required that this factual predicate on which the prosecution is based be proven beyond a reasonable doubt.

The statute in *Leary v. United States* (1969), 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532, required the jury to presume from a defendant's possession of marijuana the necessary elements of the crime, *i.e.,* that the defendant knew that the marijuana was unlawfully imported into the United States. The Supreme Court held that this presumption was constitutionally invalid.

In *Ulster County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213, the jury relied on the statutory presumption that occupants in an automobile possessed the firearms found therein, when the jury found the four defendants guilty of the unlawful possession of those firearms. In *Ulster,* the Supreme Court "granted cer-

---

[2]Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2 (previously set forth herein at page 374).

tiorari to *** consider whether the statute is constitutional in its application to respondents." (*Ulster,* 442 U.S. at 143, 60 L. Ed. 2d at 783, 99 S. Ct. at 2217.) "[i]nferences and presumptions are a staple of our adversary system of factfinding ***. The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: *the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.*" (Emphasis added.) *Ulster,* 442 U.S. at 156, 60 L. Ed. 2d at 791, 99 S. Ct. at 2224.

The Supreme Court further stated in *Ulster* that "the most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant. *** Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference ***. A mandatory presumption is a far more troublesome evidentiary device. For it may affect not only the strength of the 'no reasonable doubt' burden but also the placement of that burden; it tells the trier that he or they *must* find the elemental fact upon proof of the basic fact *** to the extent that the trier of fact is forced to abide by the presumption, and may not reject it based on an independent evaluation of the particular facts presented by the State, the analysis of the presumption's constitutional validity is logically divorced from those facts and based on the presumption's accuracy in the run of cases. It is for this reason that the Court has held it irrelevant in analyzing a mandatory presumption, but not in analyzing a purely permissive one, that there is ample evidence in the record other than the presumption to support a conviction." *Ulster,* 442 U.S. at 157-60, 60 L. Ed. 2d at 792-94, 99 S. Ct. at 2224-26.

The Court in *Ulster* further clarified "the distinction between a permissive presumption on which the prosecution is entitled to rely as one not necessarily sufficient part of its proof and a mandatory presumption which the jury must accept even if it is the sole evidence of

an element of the offense," and stated that "in the latter situation, since the prosecution bears the burden of establishing guilt, *it may not rest its case entirely on a presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt.*" (Emphasis added.) *Ulster,* 442 U.S. at 166-67, 60 L. Ed. 2d at 797-98, 99 S. Ct. at 2229-30.

The Court concluded in *Ulster* that the presumption was permissive, that the trial court clearly and accurately so instructed the jury and "also carefully instructed the jury that there is a mandatory presumption of innocence in favor of the defendants that controls, unless it, as the exclusive trier of fact, is satisfied beyond a reasonable doubt that the defendants possessed the handguns ***." *Ulster,* 442 U.S. at 161-62, 60 L. Ed. 2d at 795, 99 S. Ct. at 2227.

Following *Ulster* came *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450. In *Sandstrom,* the defendant was charged with a "deliberate homicide" in that he "purposefully or knowingly caused the death of Annie Jessen." (442 U.S. at 512, 61 L. Ed. 2d at 43, 99 S. Ct. at 2453.) At trial the defendant admitted killing the deceased but contended that he did not do so "purposefully or knowingly" and he therefore was not guilty of a "deliberate homicide" but was guilty only of a lesser offense. The defendant presented to the jury the testimony of two mental health experts who described the defendant's mental state at the time of the commission of the homicide, on which his attorney argued that the defendant had a personality disorder aggravated by alcohol consumption and therefore did not kill the deceased "purposefully or knowingly." Over the defendant's objection, the trial court instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." (442 U.S. at 513, 61 L. Ed. 2d at 44, 99 S. Ct. at 2453.) The jury convicted the defendant, and on review before the Supreme Court of the United States, the question presented was whether the foregoing instruction violated "the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt." (442 U.S. at 512, 61 L. Ed. 2d at 43, 99 S. Ct. at 2453.) The Court pointed out that "[the defendant's] jurors were told that '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.' They were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." (442 U.S. at 515, 61 L. Ed. 2d at 45, 99 S. Ct. at 2454.) The Court stated, "We consider first the validity of a conclusive presumption," then quoted as

follows from *Morrisette v. United States* (1952), 342 U.S. 246, 96 L. Ed. 288, 72 S. Ct. 240, *"A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. \*\*\* [T]his presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime."* (Emphasis added.) (442 U.S. at 521-22, 61 L. Ed. 2d at 49-50, 99 S. Ct. at 2458.) The Court in *Sandstrom* concluded:

> "Because David Sandstrom's jury may have interpreted the judge's instruction as constituting either a burden—shifting presumption \*\*\* or a conclusive presumption \*\*\* and because either interpretation would have deprived defendant of his right to the due process of law, we hold the instruction given in this case unconstitutional." 442 U.S. at 524, 61 L. Ed. 2d at 51, 99 S. Ct. at 2459.

In *People v. Housby* (1981), 84 Ill. 2d 415, the defendant was convicted of burglary and theft, respectively (Ill. Rev. Stat. 1977, ch. 38, pars. 19—1, 16—1(a)). The trial evidence abundantly established that Housby possessed recently stolen property, and the supreme court pointed out that "Housby's brief concedes that the evidence tends to show that he dealt with stolen property, and that this would sustain his conviction for theft." (*Housby*, 84 Ill. 2d at 419.) Housby attacked his burglary conviction, however, on the ground that an "instruction mandated the jury to draw an inference which deprived him of due process and compelled a verdict of guilt." (84 Ill. 2d at 419.) The instruction of which Housby complained read, "If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that the defendant obtained possession of the property by burglary." (87 Ill. 2d at 419.) The supreme court ruled, "To the extent that past Illinois decisions have held that exclusive and unexplained possession of recently stolen property is sufficient, standing alone and without corroborating evidence of guilt, for conviction of burglary, those decisions, in the light of the United States Supreme Court holding in *[Ulster] County Court,* can no longer be applied, even when the inference is regarded as permissive." (84 Ill. 2d at 423.) The *Housby* court noted, "The instruction could, of course, have been in more detail and could have expressly told the jury that it was free to credit or reject the inferences suggested to it." (84 Ill. 2d at 433.) The *Housby* court concluded, *"The constitutional dangers of presumptions used in criminal cases—that they will \*\*\* relieve the State of its duty to prove every element of the offense beyond a reasonable doubt \*\*\* are simply*

*not presented by the inference used in this case."* (Emphasis added.) 84 Ill. 2d at 431.

In *Housby,* it is quite significant that the defendant's possession of the stolen property upon which the inference of guilt of burglary was predicated was not an element required to be proven in the burglary offense, whereas in the case at bar, the fact that the defendant was under the influence of alcohol, which the jury was authorized to presume, was an essential element of the reckless homicide and driving while under the influence of alcohol offenses for which the defendant was on trial. The following language of the *Housby* court is applicable to and controlling in the case at bar.

> "In this appeal the court is concerned with the perplexing problems caused by the use of presumptions in criminal cases. Presumptions and inferences are evidentiary substitutes for the facts inferred. For that reason, instructions to a jury that it can infer an ultimate fact from a proved fact frequently raises due process objections. The thrust of these objections is that *the presumption takes the place of strict proof of the elements of the offense, each of which must be established beyond a reasonable doubt.*
>
> \* \* \*
>
> When the presumption is mandatory, that is, where the fact finder is not left free to apply or reject the inferences, [*County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213] applies the strictest standard and gives the defendant the most complete protection. When the fact finder is compelled to rely upon the presumption, the inferred fact must flow beyond a reasonable doubt from the established fact." (Emphasis added.) 84 Ill. 2d at 418-19, 420.

The *Housby* court discussed and relied on the United States Supreme Court *Sandstrom* decision, pointed out that the presumption in *Sandstrom* "was struck down as mandating a conclusive presumption on the issue of intent," and that "the [United States Supreme] court rejected the *Sandstrom* instruction, noting two features. First, the instruction failed to inform the jurors that they had the choice of applying the presumption or rejecting it. Second, the jurors were told, 'The law presumes,' instead of 'You may presume \* \* \*.' The court concluded that these elements of the instruction made it mandatory, not permissive, in the eyes of the reasonable juror." 84 Ill. 2d at 432.

It is clear from *Housby* that the factual premise upon which a statutory presumption is predicated must be proven beyond a reasonable doubt. Under *Housby,* the factual premise of a concentration

of alcohol in a person's breath at 0.10 or more, on which the presumption that the person is under the influence of alcohol is premised, must be proven beyond a reasonable doubt as prerequisite for the presumption becoming operative.

The trial court in *People v. Malik* (1983), 113 Ill. App. 3d 206, 446 N.E.2d 931, instructed the jury that the factual predicate upon which the presumption was based was required to be proven beyond a reasonable doubt. In *Malik,* the court instructed the jury, "with respect to the charge of Driving Under the Influence of Alcohol, *if you find beyond a reasonable doubt* that the amount of alcohol in the defendant's blood as shown by a chemical analysis of his breath was .10 percent or more by weight of alcohol, *you shall presume* that the defendant was under the influence of alcohol." (Emphasis added.) (*Malik,* 113 Ill. App. 3d at 210.) The *Malik* court noted that "the parties agree[d] that the presumption *** can only be justified as a permissive presumption." (113 Ill. App. 3d at 211.) We further note that the first paragraph of the instruction given in *Malik* informed the jury that it *"shall presume"* the defendant was intoxicated if the jury found *"beyond a reasonable doubt"* that the concentration of alcohol in his blood was .10% or more by weight of alcohol. The *Malik* court stated, *"This conforms to the statutory language,* but implies a mandatory presumption." (Emphasis added.) (113 Ill. App. 3d at 211.) The *Malik* court additionally observed that "the second paragraph of the given instruction does indicate that the presumption is permissive. However, the contradiction between the two paragraphs raises at least a close question as to whether the jury might be so confused as to think the presumption was either mandatory or such as to place a burden on the defendant to prove his sobriety." (113 Ill. App. 3d at 211.) Because of the said erroneous instruction, the *Malik* court reversed the defendant's conviction of the offense of driving while under the influence of alcohol and the sentence imposed thereon.

The defendant Johnson and his four confederates were charged with attempted murder, kidnapping, robbery and sexual assault in *Connecticut v. Johnson* (1983), 460 U.S. 73, 74 L. Ed. 2d 823, 103 S. Ct. 969. The defendant Johnson and his confederates did not testify at the trial, and the testimony of the victim, the people who sheltered the victim after she escaped from the defendants, the police and the State's expert witnesses was uncontradicted. The trial court gave the jury a general instruction that a "person's intention may be inferred from his conduct and every person is conclusively presumed to intend the natural and necessary consequences of his act." (*Johnson,* 460 U.S. at 478, 74 L. Ed. 2d at 829, 103 S. Ct. at 973.) In instructing the

jury on the elements of each of the four offenses charged, the trial court again instructed the jury on the conclusive presumption of intent on the attempted murder charge but did not so instruct the jury on the robbery charge. The jury found Johnson guilty of all four charges. While Johnson's appeal was pending in the Connecticut courts, the Supreme Court of the United States decided *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450, which held, as previously noted, that a jury instruction that "the law presume[s] that a person intends the ordinary consequences of his voluntary acts" (*Sandstrom,* 442 U.S. at 512, 61 L. Ed. 2d at 43, 99 S. Ct. at 2453) could be construed as creating a conclusive presumption of intent, which was an essential element in the murder charge against the defendant and therefore violated the due process clause of the fourteenth amendment. Without discussing whether the conclusive presumption intent instructions were harmless error, the Connecticut Supreme Court, in reliance on *Sandstrom,* reversed the defendant's conviction of attempted murder and robbery, which offenses required proof of the defendant's intent. The Connecticut court concluded that the unconstitutional conclusive presumption of the general instruction was not cured by the specific instructions on attempted murder and robbery. The Supreme Court of the United States granted *certiorari* to resolve the question of whether an erroneous jury instruction that the law presumes that a person intends the ordinary consequences of his voluntary acts could ever be harmless error under *Sandstrom.* The Supreme Court noted, "Given the uncontroverted evidence of respondent's participation in the events *** his most likely defense was that he intended to borrow rather than steal the car, and that he did not intend to kill the victim. The trial court's instruction removed this defense from the jury and directed it to find that the State had proved the intent element of the offenses." (*Johnson,* 460 U.S. at 85, 74 L. Ed. 2d at 833, 103 S. Ct. at 976.) In affirming the Connecticut court's reversal of the defendant's attempted murder and robbery convictions, the Supreme Court held:

> "The question here is whether a charge that might reasonably have been interpreted to require a conclusive presumption on the issue of intent may be considered harmless.
>
> The Court consistently has held that a 'trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict *** regardless of how overwhelming the evidence may point in that direction.' [Citations.] And *Sandstrom* makes it clear, we think, that a conclusive presumption on the issue of intent is the functional equiva-

lent of a directed verdict on that issue.

\* \* \*

Because a conclusive presumption eases the jury's task, 'there is no reason to believe the jury would have deliberately undertaken the more difficult task of evaluating the evidence of intent.' \*\*\*

\*\*\* If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant. To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury never may have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made. \*\*\* 'All law is technical if viewed solely from concern for punishing crime without heeding the mode by which it is accomplished.' [Citation.] ('[It is] irrelevant in analyzing a mandatory presumption \*\*\* that there is ample evidence in the record other than the presumption to support a conviction).'

\* \* \*

\*\*\* [T]he conclusive presumption the jury was instructed to apply permitted the jury to convict respondent without ever examining the evidence concerning an element of the crimes charged. *Such an error deprived respondent of 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'* [Citation.]" (Emphasis added.) 460 U.S. at 83-88, 74 L. Ed. 2d at 832-35, 103 S. Ct. at 976-78.

The dissenting justices in *Connecticut v. Johnson* did not conclude that the mandatory presumption intent instruction was harmless error, under *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824. Rather, the dissenting justices simply disagreed that such an instruction could never be harmless error and concluded that the "court properly could decide the question of harmless error," or "reverse the judgment and remand the case for [the Connecticut court's] consideration of whether the error was harmless beyond a reasonable doubt." 460 U.S. at 102, 74 L. Ed. 2d at 844, 103 S. Ct. at 985.

In *People v. Frazier* (1984), 123 Ill. App. 3d 563, 463 N.E.2d 165, the trial court initially instructed the jury that upon them finding beyond a reasonable doubt that the factual predicate upon which the presumption was based, the jury was required to accept that pre-

sumption. The trial court thereafter, however, conversely instructed the jury that the presumption was not binding on it. The instruction in *Frazier* stated:

> "*If you find beyond a reasonable doubt* that the amount of alcohol in the defendant's blood as shown by a chemical analysis of his breath was *.10 percent* or more by weight of alcohol, *you shall presume* that the defendant was under the influence of alcohol;
>
> However, this presumption is not binding on you and you may take into consideration any other evidence in determining whether or not the defendant was under the influence of alcohol." (Emphasis added.) *Frazier*, 123 Ill. App. 3d at 571.

Initially, we note that the *Frazier* instruction also informed the jury that the concentration of alcohol of "*.10 percent*" was required to be proven "*beyond a reasonable doubt*" as a predicate for the presumption that the defendant was under the influence of alcohol. (Emphasis added.) (123 Ill. App. 3d at 571.) The defendant argued in *Frazier* that the instruction directed an unconstitutional presumption of intoxication. The *Frazier* court observed that "another concern implicated by the use of presumptions in criminal cases is the duty of the State to prove every element of an offense beyond a reasonable doubt." (123 Ill. App. 3d at 572.) The court held, "The first paragraph of the instruction at issue here commands the jury to presume intoxication from proof beyond a reasonable doubt of the specified blood-alcohol concentration; to a reasonable jury this command could have the effect either of shifting the burden of persuasion to the defendant (a 'mandatory presumption') or, what is perhaps more likely, of conclusively establishing the defendant's intoxication (a 'conclusive presumption'). Either interpretation violates *Sandstrom*. * * * [T]he second paragraph of the instruction allows the jury to ignore the presumption * * *. Viewed separately, the two paragraphs are inconsistent: the apparent command of the first is contradicted in the second * * *. Giving separate hopelessly conflicting instructions may stymie the jury, for the jury has no means of deciding which instruction is correct and which is not." (123 Ill. App. 3d at 573-75.) The divided court concluded in *Frazier*, however, that because (1) the defendant's testimony showed that he consumed a fair amount of alcohol shortly before the accident; (2) the arresting officer testified that the defendant was under the influence of alcohol; and (3) the result of the breathalyzer test showed a high blood-alcohol concentration, the error emanating from the presumption instruction was harmless beyond a reasonable doubt under *Chapman v. California* (1967), 386 U.S. 18, 17 L.

Ed. 2d 705, 87 S. Ct. 824.

The *Frazier* court also cited and discussed, but did not, however, follow the holding of the United States Supreme Court in *Connecticut v. Johnson* (1983), 460 U.S. 73, 74 L. Ed. 2d 823, 103 S. Ct. 969, that, under a *Sandstrom* instruction, "[t]he conclusive presumption the jury was instructed to apply permitted the jury to convict respondent without ever examining the evidence concerning an element of the crimes charged," and *"[s]uch an error deprived respondent of 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'"* (460 U.S. at 87-88, 74 L. Ed. 2d at 835, 103 S. Ct. at 978.) The *Frazier* court chose instead to follow the dissenting opinion in *Connecticut v. Johnson* and held that the erroneous and contradictory mandatory presumptive instruction that the defendant was under the influence of alcohol based on the chemical analysis evidence of .10% or more by weight of alcohol in the defendant's blood, although violative of constitutional due process, was harmless error beyond a reasonable doubt because of the other evidence that the defendant was under the influence of alcohol, although the Supreme Court held in *Ulster* (442 U.S. at 160, 60 L. Ed. 2d at 794, 99 S. Ct. at 2226), thereafter reiterated and reaffirmed in *Connecticut v. Johnson* (460 U.S. at 86-87, 74 L. Ed. 2d at 834, 103 S. Ct. at 977), that it is "irrelevant in analyzing a mandatory presumption *** that there is ample evidence in the record other than the presumption to support a conviction." Moreover, as the *Connecticut v. Johnson* court stated, "To allow a reviewing court to perform the jury's function of evaluating the evidence *** would give *** too little weight to the method by which decisions of guilt are to be made." (460 U.S. at 86, 74 L. Ed. 2d at 834, 103 S. Ct. at 977.) It is noteworthy that the State's voluminous evidence of defendant's commission of the sexual assault, kidnapping, robbery and attempted murder offenses was uncontradicted in *Connecticut v. Johnson,* whereas, in the case at bar, contrary to the State's evidence, defense testimony that the defendant was not under the influence of alcohol was presented by the defendant, her neighbor, Harry Norred, and the defendant's alcohol breathalyzer expert witness, Gill Sapir.

A mandatory presumption was condemned in *People v. Flowers* (1985), 134 Ill. App. 3d 324, 480 N.E.2d 198, in which the defendant was convicted of retail theft, under a statute (Ill. Rev. Stat. 1983, ch. 38, par. 16A—4) which provided that if a person concealed upon his person unpurchased merchandise offered for sale in a retail establishment and removed the merchandise beyond the last known station for receiving payment, "such person *shall* be presumed to have possessed

\*\*\* such merchandise with the intention of retaining it" without paying for it. (Emphasis added.) The trial court instructed the jury in *Flowers* that the defendant "*shall be presumed* to have possessed such merchandise with the intention of retaining it without paying" for it. (Emphasis added.) (*Flowers*, 134 Ill. App. 3d at 32.) The defendant argued that the instruction denied him constitutional due process because it contained a mandatory presumption which established the element of intent to commit a theft and the instruction therefore alleviated the State of its burden to prove every element of the offense beyond a reasonable doubt. In holding that "the People's instruction clearly denied defendant his right to due process" (134 Ill. App. 3d at 328) and in reversing the defendant's conviction, the *Flowers* court further held:

> "The due process clause of the fourteenth amendment prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. [Citations.] The initial inquiry in ascertaining the validity of a presumption is to determine whether it constitutes a mandatory or permissive presumption. When the presumption is *mandatory*—that is, when the jury must infer the presumed fact if the State proves the predicate facts—the presumed fact must flow beyond a reasonable doubt from the predicate facts [citations]. When the presumption is *permissive*—that is, when the jury is given the option of ignoring or relying on the presumption—the due process clause is violated only if the presumed fact is not one that reason and common sense justify in light of the proved facts. [Citations.]
>
> The State does not dispute that its instruction created a mandatory presumption. The jury had been instructed that, upon proof of certain predicate facts, defendant '*shall be presumed*' to have possessed the cigarettes with the intention of retaining them without paying the full retail value. No option was available; the jury was instructed that it must infer the presumed fact if the State proved the predicate facts." (Emphasis added.) 134 Ill. App. 3d at 326.

Thus, under *Leary, Ulster, Sandstrom, Housby, Malik, Connecticut v. Johnson, Frazier* and *Flowers*, a presumption predicated (1) on a fact which is not required to be proven beyond a reasonable doubt; (2) but which determines an essential element of the offense of the defendant's ultimate guilt of the commission of an offense; and (3) which the jury is required to make and is not permitted to or has no

*option to reject violates constitutional due process.*

■■■ A presumption in a criminal case is a statutory creation. An instruction to the jury based on such a statutory presumption must necessarily be in the language of the statute. (See *People v. Malik* (1983), 113 Ill. App. 3d 206, 446 N.E.2d 931.) Any judicial modification or alteration of a statutory presumption from a mandatory presumption to a permissive presumption by a jury instruction constitutes unconstitutional judicial legislation or statutory amendment by judicial decree in violation of the separation of powers under article II, section 1, of the Illinois Constitution, which provides, "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." Article IV, section 1, of the Illinois Constitution provides, "The legislative power is vested in a General Assembly consisting of a Senate and a House of Representatives ***," and article VI, section 1, provides, "The judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts."

The trial court in the case at bar, over the defendant's objections, gave the jury the following instructions:

"If you find that *the amount of alcohol in the defendant's blood as shown by a chemical analysis of her breath was .10 percent or more by weight of alcohol, you may presume* that the defendant was under the influence of intoxicating liquor.

However, this presumption is not binding on you and you may take into consideration any other evidence in determining whether or not the defendant was under the influence of intoxicating liquor, at the time the defendant drove a vehicle." (Emphasis added.)

■■■ The jury was not instructed that it was required to find beyond a reasonable doubt "that the amount of alcohol in the defendant's blood as shown by a chemical analysis of her blood was .10 percent or more by weight of alcohol" before it could presume, or in order for it to presume, or as a prerequisite for its presumption, that the defendant was under the influence of intoxicating liquor. An essential element of the offenses for which the defendant was on trial and which had to be proven beyond a reasonable doubt was that the defendant was under the influence of intoxicating liquor or alcohol. The factual predicate upon which the jury was authorized to presume that the defendant was under the influence of alcohol or intoxicating liquor was "that the amount of alcohol in the defendant's blood as shown by a chemical analysis of her breath was .10 percent or more by weight of alcohol." This factual predicate was likewise required to be proven beyond a reasonable doubt before the jury could presume,

or as a prerequisite for the jury presuming that the defendant was under the influence of intoxicating liquor. *Ulster, Sandstrom, Housby, Malik, Connecticut v. Johnson, Frazier* and *Flowers* required that this predicate be proven beyond a reasonable doubt and that the jury be so instructed. The trial court therefore erred when it did not instruct the jury that it had to find that this factual predicate had been proven beyond a reasonable doubt in order for it to presume therefrom that the defendant was under the influence of alcohol. For these foregoing reasons the judgments of convictions must be reversed and the defendant is entitled to a new trial.

As previously noted, it is clear from the record before us that the prosecutor (and the jury) relied on the evidence that the defendant was under the influence of alcohol as the reckless act in the reckless homicide offense. Although the complained-of erroneous instruction was applicable to the driving under the influence of alcohol offense, it is also clear from the entire trial scenario, as heretofore set forth, that the jury could have likewise relied on and applied this erroneous instruction to the reckless homicide offense.

The presumption of being under the influence of alcohol provision of section 11—501.2(b)(3) of the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2) is inapplicable to a reckless homicide offense under sections 9—3(b) and (c)(1) of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, pars. 9—3(b), (c)(1)). The presumption of being under the influence of alcohol provision of section 11—501.2(b)(3) of the Vehicle Code applies only to offenses under the Vehicle Code or "a similar local ordinance." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—500.) The reckless homicide statute of the Criminal Code has its own presumption provision of being under the influence of alcohol, in language different than the presumption language of the Vehicle Code.

The reckless homicide statute of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, pars. 9—3(b), (c)(1)) provides, "In cases involving reckless homicide, being under the influence of alcohol *** at the time of the alleged violation shall be *prima facie* evidence of a reckless act. For the purpose of this Section, *a person shall be considered to be under the influence of alcohol* or other drugs while [t]he alcohol concentration in such person's blood or breath is 0.10 or more based on the definition of blood and breath units in section 11—501.2 of the Illinois Vehicle Code [Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2]." (Emphasis added.) The foregoing language, *"shall be considered to be under the influence of alcohol"* (emphasis added), of the reckless homicide statute of the Criminal Code is not the language of the presumption provision of the driving under the influence of alcohol statute of the

Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2).

Section 11—501.2(a) of the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2(a)) provides, *"Upon the trial* of any civil or criminal action or proceeding *arising out of an arrest for an offense as defined in Section 11—501* [driving under the influence of alcohol or other drug or combination thereof] *or a similar local ordinance,* evidence of the concentration of alcohol, \*\*\* thereof in a person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath or other bodily substance, shall be admissible \*\*\*." (Emphasis added.) The defendant's reckless homicide trial in the case at bar was not a trial *"arising out of an arrest for an offense as defined in section 11—501 or a similar local ordinance."* (Emphasis added.) See Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2(a).

It is provided in section 11—501.2(b)(3) of the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2(b)(3)) that "upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person's blood or breath at the time alleged as shown by analysis of the person's blood, urine, breath, or other bodily substance shall give rise to the following presumptions: If there was at that time an alcohol concentration of 0.10 or more, *it shall be presumed that the person was under the influence of alcohol."* (Emphasis added.) We do not speculate on why the legislature chose the language, *it shall be presumed that the person was under the influence of alcohol,* in the Vehicle Code, and the different language, *a person shall be considered to be under the influence of alcohol,* in the reckless homicide statute.

This foregoing presumption, of section 11—501.2(b)(3) of the Vehicle Code, that the person was under the influence of alcohol, does not apply to the instant reckless homicide offense because, as previously pointed out, the reckless homicide offense, although "a criminal action or proceeding," did not allege that the reckless homicide offense arose "out of acts \*\*\* committed by any person [*i.e.,* the defendant] while driving or in actual physical control of a vehicle while under the influence of alcohol."

The presumption of section 11—501.2(b)(3) of the Vehicle Code does not apply to the reckless homicide offense for the additional reason that the reckless homicide statute, as aforesaid, has its own presumption provision, *"shall be considered to be under the influence of alcohol."* (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, pars. 9—3(b), (c)(1).) It is obvious that the legislature intended that this presumption

in the reckless homicide statute apply to a reckless homicide offense and not the presumption of the Vehicle Code. It is certain that the legislature did not intend that both, or either, presumption apply in a reckless homicide trial.

A practically identical issue was presented in *People v. Murphy* (1985), 108 Ill. 228. In *Murphy,* the defendant was charged with reckless homicide. A chemical analysis of a sample of the defendant's blood had been conducted at a hospital laboratory by technicians, neither of whom had been certified as provided in section 11—501.2 of the Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.2). Because the laboratory and technicians were not so certified, Murphy moved to exclude from evidence on her reckless homicide trial their test results of the alcohol content of her blood. The trial court granted the exclusion motion and the appellate court affirmed the trial court's exclusion order. (124 Ill. App. 3d 695.) The supreme court granted the State's petition for leave to appeal.

The State contended before the supreme court in *Murphy* that the requirements that the laboratory in which a defendant's blood was chemically analyzed be certified by the Department of Public Health and that the technician conducting the chemical analysis have a permit issued by the Department were limited to a prosecution for the offense of driving while under the influence of alcohol under section 11—501 of the Vehicle Code and did not apply to a reckless homicide prosecution. Therefore, the State contended the results of the defendant's blood-alcohol test from the noncertified hospital by a technician who did not have a valid permit were admissible in the defendant's reckless homicide prosecution. The State urged in *Murphy* that an amendment to section 11—501 of the Vehicle Code clearly showed that the legislature intended to restrict the laboratory and technician certification requirements to only prosecutions for driving while under the influence of alcohol under the Vehicle Code.

The supreme court pointed out in *Murphy* that the old section 11—501(c) provided:

> "Upon the trial of any action or proceeding *arising out of the acts alleged to have been committed* by any person while driving or in actual physical control of a vehicle *while under the influence of intoxicating liquor* ***." (Emphasis added.) (*Murphy,* 108 Ill. 2d at 232.)

The supreme court noted that the new or amended section 11—501.2 provides:

> "Upon the trial of any civil or criminal action or proceeding *arising out of an arrest for an offense as defined in Section*

*11—501 [which section defines the offense of 'driving while under the influence of alcohol,* other drug or combination thereof'] *or a similar local ordinance \*\*\*."* (Emphasis added.) (*Murphy*, 108 Ill. 2d at 231.)

The supreme court reasoned and concluded in *Murphy*:

"Here the statutory language makes clear that the certification requirements are to apply only to proceedings 'arising out of an arrest for an offense as defined in Section 11—501.' Section 11—501 defines only the offense of driving while under the influence. (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501.) To hold otherwise and extend the certification requirements to reckless homicide prosecutions would render the phrase 'arising out of an arrest for an offense as defined in Section 11—501' without meaning. \*\*\* The legislature expressly defined the offense to show that the provisions concerning chemical testing were to apply only to prosecutions for that offense.

\* \* \*

The amendment was designed to remove ambiguous language and to clarify the intention to confine technical testing requirements to the offense of driving while under the influence. While the amendment's drafters may not have admirably succeeded in removing every ambiguity, they did make clear that section 11—501.2 was applicable only to the offense 'defined in section 11—501,' *i.e.*, driving under the influence.

\* \* \*

\*\*\* *[W]e conclude that the provisions of that code [Illinois Vehicle Code] do not apply to a prosecution for reckless homicide and are limited in their application to prosecutions for offenses as defined in section 11—501 of the Illinois Vehicle Code.*

\* \* \*

We hold that the [certification] Standards are applicable only to the offense of driving while under the influence, and that the test results should have been received in evidence under the usual standards governing the admission of evidence." (Emphasis added.) 108 Ill. 2d at 232-36.

Likewise, and for the reasons stated, in the case at bar the presumption provisions of sections 11—501.2(a) and (b)(1) and (b)(2) of the Vehicle Code apply only to a prosecution for driving while under the influence of alcohol under the Vehicle Code (Ill. Rev. Stat 1987, ch. 95½, par. 501.2(a), (b)(1), (b)(2)), and said presumption does not apply to a reckless homicide prosecution under the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, pars. 9.3(a), (b)).

██ Additionally, we note that the presumption as stated in the foregoing instruction was not in the language of the statute and the statute was therefore and thereby altered and modified. The instruction informed the jury that it *"may presume"* that the defendant was under the influence of intoxicating liquor, a permissive presumption, whereas the statute mandates that if there was "an alcohol concentration of 0.10 or more, it *shall be presumed* that the person was under the influence of alcohol," a mandatory presumption. (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 95½, par. 11–501.2(b)(3).) The trial court was unauthorized to modify or alter the statutory presumption from *shall* to *may*, from mandatory to permissive. If any constitutional due process infirmities exist in the statute, under *Leary, Ulster, Sandstrom, Housby, Malik, Connecticut v. Johnson, Frazier* or *Flowers* they must be corrected by the legislature. Such infirmities, if any, cannot be judicially rectified by an alteration or modification of the statute in the form of varying jury instructions by the many different trial courts.

██ We further note that the instruction told the jury that it may presume that the defendant was under the influence of intoxicating liquor on the jury's finding that "the amount of alcohol in the defendant's *blood* as shown by a chemical analysis of her *breath* was *.10 percent* or more by weight of alcohol" (emphasis added), whereas the statute (Ill. Rev. Stat. 1987, ch. 95½, par. 11–501.2(a)(5)) provides that "alcohol concentration shall mean either grams of alcohol per 100 milliliters of *blood* or grams of alcohol per 210 liters of *breath.*" (Emphasis added.) Section 11–501.2(a)(1) provides, "If there was *** an alcohol concentration of *0.10* or more, it shall be presumed that the person was under the influence of alcohol." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 95½, par. 11–501.2(a)(1).) Thus, the foregoing instruction was not in the language of the statute. Moreover, the statutory factual predicate for the presumption that the person is under the influence of alcohol is "an alcohol concentration of *0.10* or more," whereas, the instruction's factual predicate was *".10 percent* or more." *".10* percent" and *".10"* are not the same.

We also note that the record contains no evidence upon which to base the trial court's instruction that "the amount of alcohol in the defendant's blood as shown by a chemical analysis of her breath was *.10 percent* or more by weight of alcohol." (Emphasis added.) Officer Brockmeyer simply testified that the defendant's breathalyzer test was ".20." Brockmeyer was not asked by the prosecutor and he did not explain what ".20" meant or represented. He did not testify, nor was there any other evidence presented to the jury that the ".20" repre-

sented "the amount of alcohol in the defendant's blood as shown by a chemical analysis of [the defendant's] breath *** by weight of alcohol," as stated in the instruction. There was therefore no evidentiary basis for the instruction.

The single authority, *People v. Elliott* (1986), 143 Ill. App. 3d 72, 492 N.E.2d 946, on which the dissent erroneously relies is not analogous to the case at bar. Equally significant, *Elliott* clearly demonstrates the embroglio created by the improper but well-intentioned varied efforts of different trial judges to rectify and correct, by modification, the legislature's conclusive presumption of section 11–501.2(a)(3) of the Vehicle Code, in the form of instructions to the jury. The public, the bar and the litigants are not informed of the correct applicable legal principles of the statutory presumption until the instruction conference with the particular judge before whom the case happens to be tried.

In *Elliott,* the trial judge instructed the jury that *"You may infer that the defendant was under the influence of alcohol."* (Emphasis added.) (*Elliott,* 143 Ill. App. 3d at 76.) Contrary to *Leary, Ulster, Sandstrom, Housby, Malik, Connecticut v. Johnson, Frazier* and *Flowers,* the *Elliott* court concluded that at a trial for driving while under the influence of alcohol, the trial court need not have instructed the jury that it was required to find beyond a reasonable doubt that "the amount of alcohol in the defendant's blood *** was .10 percent in order that it *"may infer* that the defendant was under the influence of alcohol."* (Emphasis added.) (143 Ill. App. 3d at 76.) Moreover, the *Elliott* court's effort to distinguish *Malik* and *Frazier* on the ground that in those cases the jury was instructed, "[I]f you find beyond a reasonable doubt that the amount of alcohol in the defendant's blood *** was .10 percent" (143 Ill. App. 3d at 77), *you may presume (not "you may infer")* that the defendant was under the influence of alcohol is not persuasive. The *Elliott* court's rationale that the factual predicate of blood-alcohol content of .10, upon which a jury *may infer* the defendant is guilty of being under the influence of alcohol, need not be proven beyond a reasonable doubt, but that that same factual predicate upon which a jury *may presume* that the defendant is guilty of being under the influence of alcohol must be proven beyond a reasonable doubt is unconvincing. In any event, the *"you may presume"* instruction in the case at bar failed to satisfy the beyond a reasonable doubt proof requirement of such an instruction, as suggested in *Elliott.*

The dissent recognizes that in *Elliott* the instruction to the jury was *"you may infer,"* whereas in the case at bar the instruction to

the jury was *"you may presume."* (Emphasis added.) But "infer" and "presume" are not the same. Thorndike and Barnhart's World Book Encyclopedia Dictionary, 1973, published by Field Enterprise Educational Corporation, volume 1, at page 1071, defines "infer"; *"to find out by reasoning;* conclude; to indicate; imply; to bring on; cause; or adduce; allege, *bring in or on."* (Emphasis added.) Its synonym is "deduce." On the other hand, at page 1635, volume 2, "presume" is defined: *"to take for granted without proving;* suppose; to take upon oneself; venture; dare; *to take for granted; assume."* (Emphasis added.) Thus, for a jury to presume, *i.e.,* "to take for granted without proving," that the defendant was under the influence of alcohol, the ultimate fact of guilt in this criminal case, whether the presumption is by permission of *"may presume,"* or by the mandate of *"shall presume,"* the factual predicate upon which the presumption is based, a blood-alcohol content of 0.10, is required to be proven beyond a reasonable doubt, and the jury must be so instructed.

The dissent ignores extremely significant direct testimony of the State's witness Officer Brockmeyer, the arresting officer and the breathalyzer examining expert. Brockmeyer not only testified that the defendant's breathalyzer test result was .20, but Brockmeyer also went far beyond simply relating to the jury the defendant's test results. He further advised the jury of the conclusive legal presumption of the test results; not a permissive presumption of "you may infer," nor, for that matter, "you may presume." Brockmeyer additionally testified:

> "Q. Officer, are you familiar with *the legal presumption* under the State of Illinois *with regard to the percentage of blood-alcohol as determined by the breathalizer machine?*
>
> A. Yes, I am.
>
> Q. *What are those presumptions?*
>
> A. \*\*\* *Any time you have a .10 or above, they're presumed intoxicated."* (Emphasis added.)

This testimony of Officer Brockmeyer that the legal presumption of a .10 or above test result from the breathalyzer machine was a presumption of intoxication, coupled with the erroneous instruction, cannot be justifiably ignored.

The dissent further disregards the defense evidence but relies exclusively on the State's evidence, although controverted, of the defendant's guilt. The dissent overlooks that the State's evidence of the defendant's guilt was vigorously disputed by the defendant's equally persuasive evidence that she was not under the influence of alcohol. It was the jury's responsibility to resolve this factual contro-

versy, unpersuaded by the erroneous instruction. To conclude, as does the dissent, that, in spite of the instruction, the State's evidence established the defendant's guilt, completely ignores the proper function of the jury and the purpose of the instructions, which guide and govern the jury in the correct exercise of its duty.

For the foregoing reasons the defendant is entitled to a new trial.

The 47-year-old defendant with no criminal background urges that her 28-month imprisonment sentence is excessive and that her sentence reduction is warranted by the following mitigating factors: (1) she did not contemplate that her conduct would cause or threaten harm to another; (2) the defendant could and would to the extent possible compensate the Streetz family for their tragic loss; (3) the defendant had no history of prior delinquency, no criminal record and no prior arrest for driving while under the influence of alcohol; (4) the criminal conduct for which she was convicted would not likely recur; (5) the defendant was unlikely to commit another crime; (6) the defendant would comply with the terms of probation or periodic imprisonment; and (7) imprisonment of the defendant would endanger her health. Evidence was presented during a post-trial hearing that subsequent to the guilty finding and before sentence was imposed the defendant attempted suicide, for which she was hospitalized. Although the defendant vehemently argues that the foregoing mitigating factors far outweigh the factors in aggravation and merit her sentence reduction, but because we reverse the defendant's convictions and remand the causes for a new trial, we decline to resolve the defendant's excessive-sentence claim and, instead, afford the trial court another opportunity to weigh the mitigating and aggravating factors in determining an appropriate sentence, should the defendant be again found guilty on a retrial.

The judgments of convictions for reckless homicide and driving while under the influence of alcohol and the imprisonment sentence imposed thereon are reversed and the causes are remanded for a new trial.

Reversed and remanded.

MURRAY, J., concurs.

PRESIDING JUSTICE LORENZ, dissenting:

I respectfully dissent. Defendant was convicted of reckless homicide under the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(a)) and driving under the influence of alcohol under the Illinois

Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(2)). At issue is whether the trial court properly gave the jury a modified version of Illinois Pattern Jury Instructions, Criminal, No. 23.06 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 23.06).

The Illinois Vehicle Code provides that in the trial of any criminal action "arising out of acts alleged to have been committed by any person while driving *** under the influence of alcohol," the alcohol concentration of the person's breath gives rise to certain presumptions. (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2(b).) In the present case, the reckless homicide charge arose from the acts defendant allegedly committed while driving under the influence of alcohol and, therefore, it was proper for the trial court to instruct the jury as to the statutory presumption in the Illinois Vehicle Code.

The applicable presumption states, "If there was at that time an alcohol concentration of 0.10 or more, it *shall be presumed* that the person was under the influence of alcohol." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2(b)(3).) IPI Criminal 2d No. 23.06 states:

> "If you find that the amount of alcohol in the defendant's blood as shown by a chemical analysis of his breath was .10 percent or more by weight of alcohol, *you shall presume* that the defendant was under the influence of intoxicating liquor.
>
> However, this presumption is not binding on you and you may take into consideration any other evidence in determining whether or not the defendant was under the influence of intoxicating liquor." (Emphasis added.)

An IPI Criminal instruction shall be used unless the court determines the instruction does not accurately state the law. (107 Ill. 2d R. 451(a).) The decision to use a non-pattern jury instruction is within the trial court's discretion. *People v. Santiago* (1987), 161 Ill. App. 3d 634, 515 N.E.2d 228.

The instruction quoted above, IPI Criminal 2d No. 23.06, was criticized in *People v. Malik* (1983), 113 Ill. App. 3d 206, 446 N.E.2d 931, because the first paragraph contained mandatory language "you shall presume," which was inconsistent with the second paragraph's permissive language "this presumption is not binding on you."

In the present case, in an apparent attempt to avoid confusing the jury, the trial court modified IPI Criminal 2d No. 23.06 as follows:

> "If you find that the amount of alcohol in the defendant's blood as shown by a chemical analysis of her breath was .10 percent or more by weight of alcohol, *you may presume* that the defendant was under the influence of intoxicating liquor.

However, this presumption is not binding on you and you may take into consideration any other evidence in determining whether or not the defendant was under the influence of intoxicating liquor, at the time defendant drove a vehicle." (Emphasis added.)

The court replaced the word "shall" from the pattern instruction with the word "may," creating a permissive presumption. The modified instruction corrected the confusion between the first and second paragraphs in the pattern instruction. Although defendant contends the instruction should have included "beyond a reasonable doubt" language, such language is unnecessary in a permissive instruction when other evidence supports that element of the offense. (See *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.) In the present case, there was an abundance of evidence, other than the chemical analysis, that defendant was under the influence of alcohol. Three witnesses to the accident, who approached defendant immediately afterward, testified she was "drunk" or "very intoxicated." A police officer on the scene testified that there was a strong odor of alcohol on defendant's breath and she was "extremely intoxicated." At the police station, defendant was unable to perform two sobriety tests satisfactorily. Because there was sufficient evidence to support a permissive presumption instruction, it was not necessary to include "beyond a reasonable doubt" language in the instruction.

Additionally, a case involving a similar instruction was recently affirmed in *People v. Elliott* (1986), 143 Ill. App. 3d 72, 492 N.E.2d 946. In that case the jury was instructed, in relevant part:

"If you find at the time of the defendant's driving, the amount of alcohol in the defendant's blood as shown by a chemical analysis of his breath was .10 percent or more by weight of alcohol, *you may infer* that the defendant was under the influence of alcohol.

However, any such inference is not binding on you and you may take into consideration any other evidence, and reasonable inferences from it, in determining whether or not the defendant was under the influence of alcohol." (Emphasis added.) (*People v. Elliott* (1986), 143 Ill. App. 3d 72, 76, 492 N.E.2d 946, 949.)

On appeal, defendant argued that the phrase "beyond a reasonable doubt" should have been inserted after the word "find" in the first paragraph. The appellate court found that use of the words "may infer" created a permissive presumption which did not require the use of beyond a reasonable doubt language. Although in the present case

the instruction used the word "presume" rather than "infer," the opinion in *Elliott* is sufficiently analogous to lend support here.

In the present case, the trial court in its discretion tendered a modified instruction to clear up confusion in the pattern instruction. The use of the modified instruction, which contained a permissive presumption, was harmless in light of the overwhelming evidence that defendant was driving under the influence of alcohol. Accordingly, defendant's convictions for reckless homicide and driving under the influence of alcohol should be affirmed.