THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PHILLIP J. ELLIOTT, Defendant-Appellant.

Fourth District   No. 4—85—0520

Opinion filed May 1, 1986.

J. Steven Beckett, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On March 25, 1985, the defendant, Phillip Elliott, was arrested and charged with the offense of driving under the influence of alcohol (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(2)). On June 17, 1985, after a trial by jury in the circuit court of Champaign County, he was

found guilty of the offense of driving while under the influence of alcohol. Post-trial motions were filed and heard on July 24, 1985, and denied. Defendant was sentenced to one year's conditional discharge, fined in the amount of $500 and costs, and ordered to serve a period of incarceration. The defendant appeals. The issues presented for review are (1) whether the jury was correctly instructed on the law applicable to the evidence regarding the defendant's blood-alcohol level based on the results of a chemical analysis of his breath and (2) whether the defendant was proved guilty beyond a reasonable doubt.

At 1:15 a.m., March 25, 1985, Officer Page of the Urbana police department was westbound and stopped for a red light at the intersection of Green Street and Wright Street in Urbana. When the stoplight changed from red to green, the officer observed that the Pontiac which was directly in front of him started up and then stopped when a white Cadillac, which had been in the left eastbound lane awaiting the light turned left in front of the Pontiac. The officer turned and followed the Cadillac, estimating the speed to be approximately 45 miles per hour. He observed the Cadillac change from the left lane or the righthand land at the intersection of Springfield and Wright streets and the Cadillac turn right on Springfield. The officer activated his overhead red lights, stopped the car, approached the defendant, who was the driver, obtained his driver's license, and detected an odor of alcoholic beverage on the defendant. The officer testified that the defendant stumbled in getting out of his car and his eyes were bloodshot. Sobriety tests, including walking a straight line heel-to-toe, touching his nose, and standing on top of one leg were performed by the defendant. The officer judged that the defendant failed all of these tests and concluded that the defendant was under the influence of alcohol based on the defendant's lack of physical coordination, failure to follow instructions, bloodshot eyes, the odor of alcohol on his breath, and erratic driving. Defendant was taken to the Urbana police station and was asked to submit to a breath analysis. The defendant consented to the breath test and gave a sample which registered on the machine as a .15 blood-alcohol level. During the 20-minute waiting period the defendant had not ingested any food or drink, smoked any cigarette, belched, vomited, or done anything that would have tainted the machine's test result. In an interview at the Urbana police station, the defendant informed the officer that he had consumed four "VO's and Seven." On cross-examination, the defendant sought to impeach the officer as to the speed of the defendant's vehicle, that the road surfaces of Springfield and Green did have some imperfections together with a downhill grade from Springfield to Green Street. The

imperfections, however, according to the officer, were slight. Officer Jepsen responded as a backup unit, observed the defendant perform some of the field-sobriety tests and overheard the conversation. Officer Jepsen testified he was able to smell the odor of alcohol on the defendant's breath and observe that the defendant's eyes were glassy, and that he was of the opinion that the defendant was under the influence of alcohol based upon the two field-sobriety tests he observed, the odor of alcohol on the defendant's breath, and his observation of the defendant's eyes. He also testified and described the defendant's manner of speech as slurring some of the words. Defendant's witness, Richard Perring, was with the defendant on the night in question. Witness Perring testified that he and defendant were at Bradley's, where the alcohol was consumed. They arrived at Bradley's at about 8:30 p.m. and were at that same place until 1 a.m., March 25, 1985. Perring observed nothing unusual about the defendant's driving behavior. The defendant dropped Perring off near the intersection of Sixth and Green immediately before the defendant was arrested. He did observe the defendant stop at the intersection of Green Street and Wright Street in Urbana with his left turn signal on. Perring did not see the defendant after that time but gave the opinion that the defendant was not under the influence of alcohol.

The defendant testified that he picked up two friends including Perring at about 8 p.m. and arrived at Bradley's at about 8:30 p.m. He testified that they had to wait to get into Bradley's and during that time it rained and the weather was cool. During the course of the evening he drank four drinks of VO and Seven. During the evening hours he listened to the band and did dance intermittently until 1 a.m. He testified that after he made the turn right at Green Street, he travelled north on Wright Street just in excess of 30 miles per hour moving from the left lane to the right lane over a two-block stretch then turning right on Springfield. After turning right at Springfield and Wright, the defendant observed the police officer's lights and parked in the first available space on Burrill Avenue. The defendant described the street where the field-sobriety tests were performed as being cracked with potholes and with a lot of loose gravel and further observed that the area was wet from rain that had fallen. Defendant admitted on cross-examination that the alcohol was going to affect him somewhat but stated he was in full control of himself, that he had started drinking around 9:30 p.m., that he had only had one-half to two hours sleep the night before because he had to take care of his house during a party that his roommate had. He indicated that when he made any turns, including intersection turns or lane turns, that he

used his turn signals. In rebuttal, Officer Page, the arresting officer, testified that after the arrest the defendant told him he had started drinking at about 7 p.m. the night before and at the time he was stopped the defendant stated he was going home.

At the conference on jury instructions, the court gave People's instruction No. 11A over the defendant's objection, which instructed the jury on the use of the results of the analysis of defendant's breath. (Illinois Pattern Jury Instruction, Criminal, No. 23.06 (2d ed. 1981).) That instruction provided:

"If you find that at the time of the defendant's driving, the amount of alcohol in the defendant's blood as shown by a chemical analysis of his breath was .05 or less percent by weight of alcohol, you may infer that the defendant was not under the influence of alcohol;

If you find that at the time of the defendant's driving the amount of alcohol in the defendant's blood as shown by a chemical analysis of his breath was in excess of .05 but less than .10 percent by weight of alcohol, this may not give rise to any inference that the defendant was or was not under the influence of alcohol;

If you find that at the time of the defendant's driving the amount of alcohol in the defendant's blood as shown by a chemical analysis of his breath was .10 percent or more by weight of alcohol, you may infer that the defendant was under the influence of alcohol.

However, any such inference is not binding on you and you may take into consideration any other evidence , and reasonable inferences from it, in determining whether or not the defendant was under the influence of alcohol."

The defendant tendered instruction No. 2, identical to People's instruction No. 11A except that it added the phrase "beyond a reasonable doubt" in each of the first three paragraphs between the words "find" and "that." The trial court refused the defendant's instruction No. 2. Defendant's instruction No. 3 which was refused by the court provided:

"Inference is the process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted."

The defendant cites *People v. Malik* (1983), 113 Ill. App. 3d 206, 446 N.E.2d 931; *People v. Frazier* (1984), 123 Ill. App. 3d 563, 463 N.E.2d 165; and *People v. Graven* (1984), 124 Ill. App. 3d 990, 464

N.E.2d 1132. The defendant argued, and the State and the trial court agreed, that these decisions did create confusion in the trial court's responsibility to properly instruct the jury.

In *Malik*, the trial court gave a modified version of IPI Criminal 2d No. 23.06, which provided in part that " 'if you find beyond a reasonable doubt that the amount of alcohol in the defendant's blood as shown by a chemical analysis of his breath was .10 percent or more by weight of alcohol, you shall presume that the defendant was under the influence of alcohol.' " (*People v. Malik* (1983), 113 Ill. App. 3d 206, 210, 446 N.E.2d 931, 934.) Defendant in *Malik* had tendered an instruction which stated "you may infer" in place of "you shall presume," based upon certain findings, that the defendant was under the influence of alcohol with a second paragraph indicating that they were not required to make the presumption, instructing the jury that they could take into consideration any other evidence in determining whether or not the defendant was under the influence of alcohol. In *Frazier*, the same first paragraph instruction given in *Malik* was given by the trial court, but *Frazier* also gave the second paragraph of IPI Criminal 2d No. 23.06. As in *Malik*, this court found error in the given instruction but concluded that the error was either solved by other instructions given or that such error was harmless beyond a reasonable doubt. *People v. Frazier* (1984), 123 Ill. App. 3d 563, 573-74, 463 N.E.2d 165.

The instruction given in the instant case substituted the words "may infer" for "shall presume" avoiding the suggestion of a mandatory presumption. The defendant argues that the instruction still does not address the proof of the underlying fact from which the permissive inference or presumption was to be drawn.

The trial court in giving the instruction in the form submitted by the State using the words "may infer" did not commit error. The trial court's refusal of defendant's tendered instructions requiring a finding beyond a reasonable doubt of the amount of alcohol in the defendant's blood was proper. As indicated, IPI Criminal 2d No. 23.06 informs the jury of the law of the State of Illinois with respect to chemical tests. It is not an issues instruction with respect to a charge of driving while under the influence of alcohol. This is especially true when IPI Criminal 2d No. 23.06 provides a second paragraph indicating that the presumption is not binding upon the jury but that they may take into consideration any other evidence in determining whether or not the defendant was under the influence of intoxicating liquor. The instruction as given did not violate the standards set down by the United States Supreme Court in *Sandstrom v. Montana* (1979),

442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450.

In *Sandstrom*, the instruction provided in substance "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Supreme Court stated that the jurors:

"[W]ere not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. \*\*\*.

\* \* \*

\*\*\* They were not told that the presumption could be rebutted, as the Montana Supreme Court held, by the defendant's simple presentation of 'some' evidence; nor even that it could be rebutted at all. Given the common definition of 'presume' as 'to suppose to be true without proof,' Webster's New Collegiate Dictionary 911 (1974), and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways." *Sandstrom v. Montana* (1979), 442 U.S. 510, 515-17, 61 L. Ed. 2d 39, 45-46, 99 S. Ct. 2450, 2454-56.

In *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151, *cert. denied* (1981), 454 U.S. 845, 70 L. Ed. 2d 131, 102 S. Ct. 160, the Supreme Court, quoting *Leary v. United States* (1969), 395 U.S. 6, 23 L. Ed. 2d 57, 89 S. Ct. 1532, stated:

" '[A] criminal statutory presumption must be regarded as "irrational' or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.' " (*People v. Housby* (1981), 84 Ill. 2d 415, 420-21, 420 N.E.2d 151, 154.)

In *Housby*, the Supreme Court, in discussing the *Sandstrom* instruction, stated:

"The instruction in this case states that the jurors 'may infer.' These same words address the first feature by informing the jurors that they had the option of ignoring the instruction. The instruction in this case did not explicitly tell the jurors that they were free to choose whether to credit or reject the presumption. But the words 'you may infer' were adequate to advise them that the inference with which they were dealing with permissive, and that they were free to decide whether to make use of it in judging Housby's guilt. Similar language ('you may infer') made the instruction struck down in *Sandstrom* valid when later challenged before the Montana Supreme Court." (84

Ill. 2d 415, 432-33, 420 N.E.2d 151, 159.)

In *Housby*, where there was not a second paragraph of the instruction as there is in the instant case, the Supreme Court stated in substance that such an addition, although perhaps prudent, would be redundant, because the instruction, *as given*, advised the jurors that they "may infer."

The dilemma trial courts are faced with, with respect to the application or use of IPI Criminal 2d No. 23.06, is perchance caused in part by too much stress given to the words "infer" or "presume." Of equal or more importance is the determination of whether to use the word "may" or the word "shall." In the instant case, the court gave an instruction which said "may infer." As stated in *Housby* and as shown in the subsequent *Sandstrom* case before the Montana Supreme Court, when the words "you may infer" are used in the instruction, the instruction is proper. Although based on a different form of charge, the Supreme Court in *People v. Ziltz* (1983), 98 Ill. 2d 38, 43, 455 N.E.2d 70, 72, made it clear the State does have a rational basis for curbing the incidence of drunk driving and passing legislation which is a reasonable means of promoting that interest.

The instruction here on the law in the State of Illinois is no more arbitrary than statutes which set maximum speed limits and are given as instructions. Also, as stated in *Housby*:

> "When examining instructions in a case, no single instruction is to be judged in artificial isolation. It must be viewed in the context of the entire charge." (*People v. Housby* (1981), 84 Ill. 2d 415, 433-34, 420 N.E.2d 151, 160; see also *People v. Malik* (1983), 113 Ill. App. 3d 206, 446 N.E.2d 931, and *People v. Graven* (1984), 124 Ill. App. 3d 990, 464 N.E.2d 1132.)

In the instant case, the jury was properly instructed as to its duties, the charge made against the defendant, the presumption of innocence, the issues, the burden of proof; and that it should not single out particular instructions, was to act as judge of the facts, and to consider all of the evidence in the light of the jurors' observations and experience. The jury was also instructed on the State's burden as to reasonable doubt. An instruction concerning blood-alcohol content in a driving-under-the-influence charge is certainly appropriate and proper when considering that the Supreme Court in *Housby* approved the inference that unexplained possession of stolen goods was by burglary.

The instruction in the instant case is also proper inasmuch as there was other corroborative evidence concerning the defendant's guilt. The blood-alcohol content was not the only evidence submitted by the State concerning the defendant's driving while under the influ-

ence, as that of the arresting officer and the backup officer was entirely adequate to prove beyond a reasonable doubt that the defendant did drive the vehicle while under the influence of alcohol.

■ With respect to the defendant's objection to the court refusing to give defendant's instruction No. 3 defining the word inference, the trial court's refusal was not error. The instructions as given by the court were complete in themselves and it was not necessary to instruct the jury on the definition of the word inference.

■ The defendant also argues that he was not proved guilty beyond a reasonable doubt. The record is clear that there was considerable evidence presented by the State in its case in chief sufficient to allow a jury to find the defendant guilty of driving while under the influence of alcohol. The testimony of the arresting officer and the backup officer, the blood-alcohol test, along with the defendant's admission that he had been drinking are sufficient to support the defendant's conviction for driving while under the influence of alcohol beyond a reasonable doubt. *People v. Davis* (1982), 105 Ill. App. 3d 129, 434 N.E.2d 13; *People v. Peterson* (1982), 108 Ill. App. 3d 856, 439 N.E.2d 1103.

■ Defendant's argument that little weight should be given to the breath-analysis report since the test was given over an hour after the consumption of alcohol is without merit. The legislature has provided a means and a standard for giving the blood-alcohol test. The supreme court in *Ziltz* found section 11—501(a)(1) constitutional. The same rationale applies in the instant case. The statute was complied with and the important considerations are whether the defendant had ingested any food or drink, smoked cigarettes, put other substance in his mouth, or done anything which would have tainted the test result.

In summary, as to the reasonable doubt issue, "[w]here the guilt or innocence of the defendant depends upon the credibility of conflicting testimony, the finding of the trial court will not be disturbed." *People v. Cool* (1962), 26 Ill. 2d 255, 258, 186 N.E.2d 254, 255.

Affirmed.

GREEN and SPITZ, JJ., concur.