(No. 68192.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DOROTHY R. HESTER, Appellee.

*Opinion filed September 20, 1989.*

92

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund and Thomas P. Needham, Assistant State's Attorneys, of counsel), for the People.

No appearance for appellee.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Defendant, Dorothy R. Hester, was charged by information with the reckless homicide (Ill. Rev. Stat. 1983, ch. 38, par. 9—3(a)) of Diane Streetz (victim). She was also charged with the misdemeanor offense of driving under the influence of alcohol (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(2)); however, that charge was not

included in the record on appeal. (See also 178 Ill. App. 3d 360, 364 n.1.) Following a jury trial, defendant was convicted of both offenses and sentenced to 28 months' imprisonment for reckless homicide and a concurrent term of 364 days for driving under the influence of alcohol. Defendant appealed. A majority of the appellate court reversed and remanded the cause for a new trial, on the basis that the jury was improperly instructed. (178 Ill. App. 3d 360.) We granted the State's petition for leave to appeal (107 Ill. 2d R. 315).

Thereafter, the State opted to have its petition for leave to appeal stand as its brief. (107 Ill. 2d R. 315(g).) We note that defendant did not file either an answer to the State's petition for leave to appeal or a response brief, nor did she appear before the court to present oral argument.

The sole issue presented for review is whether the trial court denied defendant due process of law by instructing the jury with a modified version of Illinois Pattern Jury Instructions, Criminal, No. 23.06 (2d ed. 1981) (hereinafter IPI Criminal 2d). The instruction as given is set forth in detail later in this opinion.

The charges stem from an incident which occurred on July 4, 1984, in Streamwood, Illinois. About 10:15 p.m., approximately 100 people were walking southbound on the sidewalk of Park Boulevard; they were coming from a fireworks display. At this time, defendant was leaving a Streamwood carnival and driving northbound on Park Boulevard when she lost control of her car. The car ricocheted off a curb, struck a boulder in the median strip and jumped the curb at Brunswick Street. The car went onto the lawn area, knocked over a 70-foot chain link fence and headed off in a 90-degree turn across Park Boulevard. The car struck two pedestrians: one was thrown onto the hood of the car; the other, the victim, was pulled under the car and dragged over the pave-

ment, a curb and a median strip. Her body separated from the undercarriage of the car when it went over a cement parking bumper. The car continued into a neighboring shopping center, where it struck two small trucks and came to a halt. The victim died a short time later.

Several people rushed to the automobile and to the victim. Jack Gravely, Ronald Zimmer and Edward Winclechter testified that when defendant got out of her car they noticed a strong odor of alcohol on her breath and that she appeared to be intoxicated. Gravely testified that defendant did not have any bruises, marks or cuts on her face nor was she bleeding. He, Ronald Zimmer and Carol Zimmer also testified that they never saw the car's brake lights activated at any time during its errant course. Additionally, Joanne Kitterman and Carol Zimmer testified that the car never slowed down. Ronald Zimmer stated that the car accelerated to a speed approaching 50 miles per hour. The posted speed limit was 30 miles per hour.

Randall Brockmeyer, a Streamwood police officer, testified that he arrived at the scene of the accident at approximately 10:25 p.m. After making some initial inquiries and observations of defendant, he placed her under arrest for driving under the influence of alcohol, because he smelled a strong odor of alcohol on her breath, her eyes were "bloodshot," and she appeared intoxicated. Brockmeyer, a licensed breathalyzer operator, administered a breathalyzer test to defendant at 11:05 p.m. The results revealed that her blood-alcohol level was .20%.

Defendant testified that she drank one beer with her dinner in the late afternoon and another one while at the carnival. She said that a third beer was spilled on her by someone she was speaking with at the carnival. She further testified that while driving, the car went "bump" and pulled to the right. She tried to correct the direction of the car but she could not and the car struck a boulder

in the median strip. In attempting to regain control over the car, she said she wrestled with the steering wheel, cutting and bruising her hand. She also stated that she tried to brake the vehicle and believed that she was going only 30 miles per hour. She testified that she was thrown about the car, striking her head on the roof several times, and after coming to a halt in the parking lot, she was "dizzy" and "did not know what [she] hit" or "what was going on." She further testified that she smoked cigarettes and took two prescription drugs—Tagamet for an ulcer and Dilantin, an antispasmodic—which defense counsel argued affected the results of her breathalyzer test.

Both sides presented expert testimony regarding the accuracy of the breathalyzer machine and the results of the breathalyzer examination. However, the defense expert, Gil Sapir, was not certified on the machine, a Smith-Wesson 1000, used to test the defendant, although he was trained on the Smith-Wesson 2000 by the manufacturer.

Charles Roberts, an accident reconstructionist and engineer, testified for the State, as an expert. He stated that the car's braking system was operable, the steering linkage turned freely and there was nothing wrong with the accelerator linkage. Roberts also stated that there was a deformity, a "bend," in the car's steering linkage, but he testified that it was unrelated to the car's striking the boulder and opined that this bend would not result in the "total" loss of control of the vehicle. On cross-examination he did say that it could make the car more difficult to control.

It also appears, from defendant's appellate court brief, that she too introduced an expert accident reconstructionist at trial. The record on appeal, however, does not contain a transcript of that testimony.

At the instructions conference, the State proposed that a modified version of IPI Criminal 2d No. 23.06 be used. Defense counsel objected. Although his proposed

instruction and the State's were similar, his instruction included "beyond a reasonable doubt" language, "because of the delicate nature of the inference that this instruction gives rise to." The trial court overruled the objection. In doing so, the trial court stated that instruction 11 (IPI Criminal 2d No. 23.04 (the issues instruction for driving under the influence of intoxicating liquor)) "tells us that if you find from the consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty; that covers the entire area of these instructions, because that refers to each of the elements, in effect."

After closing arguments, the court instructed the jury, in part, as follows:

"If you find that the amount of alcohol in the defendant's blood as shown by a chemical analysis of her breath was .10 percent or more by weight of alcohol, you *may* presume that the defendant was under the influence of intoxicating liquor.

However, this presumption is not binding on you and you may take into consideration any other evidence in determining whether or not the defendant was under the influence of intoxicating liquor, at the time the defendant drove a vehicle." (Emphasis added.)

This was the modified version of the IPI instruction offered by the State, and the word "shall" in the IPI instruction (IPI Criminal 2d No. 23.06) was replaced with the word "may."

The jury found the defendant guilty. The majority of the appellate court, in reversing and remanding the case for a new trial, held that the jury instruction denied defendant due process of law, because: (1) the instruction contained a mandatory presumption and the jury was not instructed that it was required to find beyond a reasonable doubt that defendant's blood-alcohol level was

.10% or more before it could rely on the presumption; and (2) the trial court's substitution of the word "may" for "shall" was tantamount to judicial legislation.

The State argues that the appellate court erred in holding that defendant was denied due process of law, because the contested jury instruction contained a permissive, not a mandatory, presumption. The State also maintains that the substitution of the non-IPI instruction was proper, because the IPI instruction does not fairly state the law.

The purpose of an instruction is to guide the jury in its deliberations and to help it reach a proper verdict through the application of legal principles as applied to the evidence and the law. (*People v. Gambony* (1948), 402 Ill. 74, 81-82.) Instructions should not be viewed in isolation, but should be considered as a whole. *Francis v. Franklin* (1985), 471 U.S. 307, 315, 85 L. Ed. 2d 344, 354, 105 S. Ct. 1965, 1971; *People v. Housby* (1981), 84 Ill. 2d 415, 433-34; *Gambony*, 402 Ill. at 82; *People v. Frazier* (1984), 123 Ill. App. 3d 563, 573-74.

It is a well-settled principle that an accused may only be convicted of a criminal offense by proof establishing her guilt beyond a reasonable doubt. (*In re Winship* (1970), 397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1073.) In establishing an accused's guilt, the State may be entitled to rely upon presumptions or inferences. *Ulster County Court v. Allen* (1979), 442 U.S. 140, 156, 60 L. Ed. 2d 777, 791, 99 S. Ct. 2213, 2224.

It has been recognized that inferences and presumptions play a vital role in the expeditious resolution of factual questions, with the value of the presumption or inference resting on the strength of the connection between the elemental or ultimate fact presumed or inferred and the basic or evidentiary fact. (*Allen*, 442 U.S. at 156, 60 L. Ed. 2d at 791, 99 S. Ct. at 2224.) In criminal cases, the use of a presumption or inference must

not invade the territory of the fact finder to determine the existence of the ultimate or elemental fact beyond a reasonable doubt. *Allen*, 442 U.S. at 156, 60 L. Ed. 2d at 791, 99 S. Ct. at 2224.

Presumptions are separated into two groups: mandatory and permissive. It must be determined into what group the presumption contained in the jury instruction at issue here falls. *Sandstrom v. Montana* (1979), 442 U.S. 510, 514, 61 L. Ed. 2d 39, 45, 99 S. Ct. 2450, 2454.

A mandatory presumption is one where the fact finder is not free to reject the proffered presumption. A mandatory presumption may be conclusive, that is, "an irrebuttable direction" (*Sandstrom*, 442 U.S. at 517, 61 L. Ed. 2d at 47, 99 S. Ct. at 2456; *Housby*, 84 Ill. 2d at 420), or it may shift the burden of proof. "[I]t tells the trier that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." (Emphasis in original.) (*Allen*, 442 U.S. at 157, 60 L. Ed. 2d at 792, 99 S. Ct. at 2225. See also *Francis*, 471 U.S. at 314 n.2, 85 L. Ed. 2d at 353 n.2, 105 S. Ct. at 1971 n.2; *Allen*, 442 U.S. at 157 n.16, 60 L. Ed. 2d at 792 n.16, 99 S. Ct. at 2225 n.16.) A presumption, however, may not shift the burden of persuasion to the defendant; that burden must remain with the State. (*Francis*, 471 U.S. at 314, 85 L. Ed. 2d at 353, 105 S. Ct. at 1971; *Sandstrom*, 442 U.S. at 517-24, 61 L. Ed. 2d at 46-51, 99 S. Ct. at 2456-59; *People v. Ziltz* (1983), 98 Ill. 2d 38, 44.) The validity of a mandatory presumption is subject to a "beyond a reasonable doubt" test. *Allen*, 442 U.S. at 165-67, 60 L. Ed. 2d at 797-98, 99 S. Ct. at 2229-30.

A permissive presumption, on the other hand, is one where the fact finder is free to accept or reject the suggested presumption. (*Allen*, 442 U.S. at 157, 60 L. Ed. 2d at 792, 99 S. Ct. at 2224.) It places no burden on the

defendant and "affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." (*Allen*, 442 U.S. at 157, 60 L. Ed. 2d at 792, 99 S. Ct. at 2224-25. See also *Sandstrom*, 442 U.S. at 514-15, 61 L. Ed. 2d at 45, 99 S. Ct. at 2454; *Housby*, 84 Ill. 2d at 432-33; *People v. Elliott* (1986), 143 Ill. App. 3d 72, 77; *Frazier*, 123 Ill. App. 3d at 572 (permissive presumption operates as an inference).) The validity of a permissive presumption is subject to a less stringent test: there must be a rational connection between the facts proved and the facts presumed, and the ultimate fact must be "more likely than not to flow" from the basic fact. (*Housby*, 84 Ill. 2d at 420-21, quoting *Allen*, 442 U.S. at 165, 60 L. Ed. 2d at 797, 99 S. Ct. at 2229. See also *Francis*, 471 U.S. at 314-15, 85 L. Ed. 2d at 353-54, 105 S. Ct. at 1971.) Nevertheless, the inference must be supported by corroborating evidence of guilt; if there is no corroborating evidence, the "leap from the proved fact to the presumed element" must still be proved beyond a reasonable doubt. *Housby*, 84 Ill. 2d at 421, citing *Allen*, 442 U.S. at 167, 60 L. Ed. 2d at 798, 99 S. Ct. at 2229-30.

To determine whether a presumption contained in a jury instruction is mandatory or permissive, a court must look at the words contained in the instruction. "[W]hether a defendant has been accorded [her] constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom*, 442 U.S. at 514, 61 L. Ed. 2d at 45, 99 S. Ct. at 2454.

Here, the instruction stated that the jury "may presume" that defendant was under the influence of intoxicating liquors if defendant's blood-alcohol level was .10% or more, but that presumption was "not binding" on it. A reasonable juror could only interpret the instruction to

be permissive, in that the juror could either accept or reject the presumption. The juror was not compelled to draw the conclusion that defendant was under the influence of intoxicating liquor based upon the basic fact that her blood-alcohol level was .10% or more. Consequently, the jury instruction was a permissive one. (See *Sandstrom*, 442 U.S. at 515, 61 L. Ed. 2d at 45, 99 S. Ct. at 2454; *Housby*, 84 Ill. 2d at 432-33 ("may presume" or "may infer" indicative of permissive presumption); *Elliott*, 143 Ill. App. 3d at 77-80 ("may infer" avoids suggestion of mandatory presumption); *Frazier*, 123 Ill. App. 3d at 573-74.) Defendant, in her appellate court brief, conceded that the presumption at issue here was a permissive one. Moreover, with regards to the presumption, common sense, experience, and scientific testing have shown a close correlation (a "rational connection") between, and one which is "more likely than not to flow" from, having a blood-alcohol level of .10% or more and being under the influence of intoxicating liquors. (See, *e.g.*, *California v. Trombetta* (1984), 467 U.S. 479, 489-91, 81 L. Ed. 2d 413, 422-24, 104 S. Ct. 2528, 2534-35 (discussing California's use of the "Intoxilyzer" breathalyzer machine); *People v. Capporelli* (1986), 148 Ill. App. 3d 1048, 1054-55.) Also, in addition to the breathalyzer results (which indicated that defendant had a .20% blood-alcohol level), corroborating evidence was presented at defendant's trial that her breath had a strong odor of alcohol and that she appeared intoxicated. This evidence supported the permissive inference contained in the jury instruction; hence, the presumption did not stand alone, nor was it the sole source of the finding of guilt. (See *Housby*, 84 Ill. 2d at 421.) Furthermore, although the contested jury instruction did not contain "beyond a reasonable doubt" language, that standard was included in a later issues instruction given to the jury. That instruction covered each element of the of-

fense of driving under the influence of intoxicating liquor. Accordingly, reading the jury instructions in their entirety, defendant was not deprived of her due process rights by the use of the contested instruction. See *Francis*, 471 U.S. at 315, 85 L. Ed. 2d at 354, 105 S. Ct. at 1971; *Housby*, 84 Ill. 2d at 433-34; *Frazier*, 123 Ill. App. 3d at 573-74.

Next, the State argues that the use of the word "may" in lieu of "shall" in the instruction "remove[d] the inconsistency between the mandatory language of the first paragraph and the permissive language of the second paragraph of the IPI Instruction." Relying on three appellate court cases (*People v. Elliott* (1986), 143 Ill. App. 3d 72, 77; *People v. Frazier* (1984), 123 Ill. App. 3d 563, 573-74; and *People v. Malik* (1983), 113 Ill. App. 3d 206, 211), the State contends that the substitution of "may" for "shall" was not a form of judicial legislation because the IPI instruction did not fairly state the law.

In *Elliott*, *Frazier* and *Malik*, each defendant was convicted of driving under the influence of alcohol, and each jury was instructed with IPI Criminal 2d No. 23.06. The *Malik* court found the two paragraphs of the instruction, the first of which was modified to include "beyond a reasonable doubt language," to be contradictory and raised a "close" question as to whether the jury would think the presumption was mandatory or that the defendant had to prove his sobriety. (*Malik*, 113 Ill. App. 3d at 211.) Although the court found this to be error, it did not address the propriety of the instruction. (*Malik*, 113 Ill. App. 3d at 211.) The *Frazier* court found the instruction, which also added "beyond a reasonable doubt" language, to be inconsistent but it reconciled the contradiction, finding that the sequence of the instruction dispelled any notion that the presumption was mandatory; the court also found that the instructions as a whole cured any defect in

the instruction concerning the presumption. (*Frazier*, 123 Ill. App. 3d at 573-74.) In *Elliott*, the jury instruction substituted the words "may infer" for "shall presume." The *Elliott* court found that this "avoid[ed] the suggestion of a mandatory presumption," and that it was not error for the trial court to give the modified instruction. (*Elliott*, 143 Ill. App. 3d at 77.) There, as here, the trial court rejected defendant's instruction requiring a finding beyond a reasonable doubt of the amount of alcohol in defendant's blood. The *Elliott* court found that that too was proper because IPI Criminal 2d No. 23.06 "is not an issues instruction with respect to a charge of driving while under the influence of alcohol" (*Elliott*, 143 Ill. App. 3d at 77), and it concluded that the instruction as given was proper (*Elliott*, 143 Ill. App. 3d at 79-80).

These cases indicate that IPI Criminal 2d No. 23.06 does not fairly state the law. As such, under the rules of this court, the trial court was authorized to modify the jury instruction. (107 Ill. 2d R. 451.) Additionally, the legislative debates reveal that the legislature knew of the constitutional restrictions on the use of mandatory presumptions (see, *e.g.*, *Ulster County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213; *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450; *People v. Housby* (1981), 84 Ill. 2d 415) when it enacted Public Act 82—311, which added section 11—501.2 to the Illinois Vehicle Code (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2). (See 82d Ill. Gen. Assem., Senate Proceedings, May 29, 1981, at 194-96, 201-02 (statements of Senators Bowers, Coffey (sponsor of S.B. 457), Egan, Joyce and Netsch) (presumption as to blood-alcohol content is rebuttable).) The legislature rejected the use of a mandatory presumption in the statute and, therefore, a mandatory presumption cannot be added or required by the instruction. After all, there is a difference between a statute and a jury instruction. Simply stated, statutes are

passed by the legislature, whereas criminal jury instructions are prepared by the Supreme Court Committee on Jury Instructions in Criminal Cases. There is no advance approval of them by this court, and they are approved or rejected only after they have been tested in the courts. (*Powers v. Illinois Central Gulf R.R. Co.* (1982), 91 Ill. 2d 375, 385.) Under the facts of this case, it cannot be said that, by merely replacing the word "may" for "shall" in the jury instruction, the trial court was engaged in an act of judicial legislation. Accordingly, the trial court did not err in giving the modified instruction.

For the foregoing reasons, the judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*