THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES A. KRAUS, Defendant-Appellant.

First District (6th Division)   Nos. 1—99—1595, 1—99—2560 cons.

Opinion filed December 29, 2000.

Law Office of Larry Wechter, of Batavia (Larry Wechter, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Kenneth T. McCurry and Christine L. Kornak, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant James A. Kraus appeals a jury conviction and judgment for aggravated reckless homicide. Defendant was convicted of both aggravated reckless homicide and reckless homicide but was sentenced on only aggravated reckless homicide. The circuit court denied defendant's motion to vacate the verdict of reckless homicide as a violation of the one-act, one-crime rule. Defendant appeals.

On appeal, defendant contends the circuit court erred in: (1) refusing specific supplemental questions by defense counsel to three individual prospective jurors regarding the State's burden of proof; (2) allowing the jury to find him guilty beyond a reasonable doubt; (3) instructing the jury; and (4) refusing to vacate his conviction for reckless homicide. We affirm.

During jury selection, the circuit court questioned prospective jurors as a group regarding defendant's presumption of innocence, the State's burden of proof and that defendant's failure to testify could not be considered against him, and permitted defendant to address prospective jurors individually. However, the circuit court refused specific supplemental questions by defense counsel to three individual prospective jurors because the questions mixed the specific charges against defendant with those basic legal principles or were redundant. Defendant exhausted his peremptory challenges.

Trial testimony revealed that on March 16, 1997, David Andrasco was traveling eastbound on 111th Street toward the Burlington Railroad tracks. As he approached the tracks he saw "a body fly" and he pulled off the road to see if he could help. At the same time, John

Madden was traveling eastbound on 111th Street when he heard a popping sound and saw a maroon Buick hit someone. Madden then saw the body roll off the top of the car and go up in the air. Madden also pulled over and, after speaking to Andrasco, reentered his car and followed the Buick.

Madden caught up with the Buick approximately one mile away, pulled up next to it and asked the driver if he knew that he had just been in an accident. The driver responded that he did not think he had hit anything. Madden then pointed out the Buick's broken windshield and told the driver that the police were coming. The driver said he would turn around, but pulled into a gas station, exited a different entrance and continued on. Madden noted the Buick's license plate number and returned to the scene of the accident to speak with police.

Oak Lawn police officer Ronald Stoklosa, an evidence technician, testified that he arrived at the scene at approximately 5:35 p.m., while it was still light outside. Officer Stoklosa testified that there was no curb in the area but that there was an eight-foot-wide gravel shoulder. Officer Stoklosa noticed approximately four fresh digs or scrapings in the gravel and some spray, which indicated something moving back to the roadway. Officer Stoklosa photographed the markings with both a Polaroid and a 35 millimeter camera and identified some of the photographs at trial.

Oak Lawn police officer Robert Brewer, a patrol officer and accident investigator, arrived at the scene at approximately 6:30 p.m. Officer Brewer measured and documented the location of all of the evidence and examined the victim's bicycle. Officer Brewer testified that he observed blood spatters and fresh skid marks, scuff marks, and gouge marks in the shoulder of the roadway. The rear wheel of the victim's bicycle was caved in and pinned against the frame of the bike.

Officer Stoklosa ran the license plate number given to him by Madden and went to a residence on Morris Court in Lombard where he saw a vehicle backed into the garage. The vehicle had front-end damage and a shattered windshield, dents in the hood, some green fabric on the top edge of the hood and on the top edge of the windshield, and hair and flesh at the top of the windshield. Officer Stoklosa photographed the vehicle and identified the photographs at trial. He testified that the damage he saw was consistent with a body sliding across the top of the hood and impacting the windshield.

Lombard police officers Joseph Wagner and Christopher Bakken also arrived at the Lombard address and saw a vehicle, with a smashed windshield on the passenger side, backed into the garage. As the officers pulled into the driveway, another car pulled out of the garage. The driver, Charlotte Kraus, exited the car and approached Officer Wagner.

She told him that her husband had been involved in an accident and that they were on their way to report it. Defendant then exited the passenger side of the car and told Officer Wagner that he was coming from the St. Patrick's Day parade, where he had consumed two beers at 4:30 p.m. He also stated that he was involved in an accident on 111th Street just west of Cicero where he hit a construction barricade. He said he stopped and looked but did not see anything. Defendant also stated that he had not consumed any alcohol since he left the parade.

Officer Wagner testified that the defendant had glassy, bloodshot eyes, a strong odor of alcohol on his breath, and slurred speech. Officer Bakken confirmed these observations and added that the defendant was swaying while they spoke with him. Both Officers Wagner and Bakken concluded, based upon their experience, training and personal observation, that the defendant was unfit to drive a motor vehicle and arrested defendant. Neither officer conducted a field sobriety test or administered a breathalyzer test.

A blood-alcohol test conducted on the defendant at 10:55 p.m. revealed .047 grams of alcohol per deciliter of defendant's blood.

Dr. Albert Karl Larson, a forensic scientist employed by the Illinois State Police, testified that the defendant's probable blood-alcohol level at the time of the accident was between .102 and .157 grams of alcohol per deciliter of blood based upon the blood-alcohol test and metabolism rate of alcohol for human beings of .01 and .02 grams of ethanol per deciliter of blood per hour. Dr. Larson testified that a person's blood-alcohol level can peak up to an hour after he has stopped drinking, and the consumption of food can add an additional half hour. Dr. Larson admitted that if the defendant drank alcohol less than an hour before the accident or if he had something to eat, the lower number in his range could be lower than .100. However, Dr. Larson explained that a person who had consumed only two beers at 4:30 p.m. should not have a blood-alcohol concentration of .047 at 10:55 p.m. and concluded that defendant must have had more than two beers.

Dr. Larson testified that some of the effects of alcohol include a decrease in judgment and motor skills, as well as balance and vision problems, and that a person with an alcohol level between .102 and .157 would be expected to exhibit some of these characteristics. Defendant's slurred speech, bloodshot eyes, swaying and smell of alcohol at 6:35 p.m. were consistent with this range. Dr. Larson further testified that people can be "under the influence of alcohol" at .09 or even .08 grams of alcohol per deciliter of blood.

A forensic pathologist from the Cook County medical examiner's

office performed an autopsy and testified that the victim's injuries were consistent with a body impacting the front of a vehicle, hitting his head on the roof of the car, rolling off the vehicle and tumbling or sliding on a gravel surface. A toxicology exam of the victim's blood revealed a blood-alcohol level of .216 grams of alcohol per deciliter of blood. The victim was wearing green corduroy pants at the time of the accident and suffered a crushed skull and multiple injuries.

Dr. Austin Gibbons, a retained defense witness, testified that the metabolism rate of alcohol for humans can vary from .006 to .04 grams of ethanol per deciliter of blood per hour. He admitted it was "unlikely" that a person could consume only two beers at 4:30 p.m. and have a blood-alcohol level of .047 6½ hours later.

Karen Geiger and her mother Elizabeth Bingen also testified for the defense. At approximately 5:15 or 5:25 p.m. on the date of the accident, Geiger and Bingen were returning from the South Side Irish parade. As they approached the intersection of 111th Street and Cicero Avenue (approximately one-quarter to one-half mile before the railroad tracks), the women noticed a man on a bicycle at the curbed island by the right turn lane. Geiger saw the man fall off his bike twice, once when he caught himself as he was falling into a van and again when he fell to the ground, got up and remounted his bike. Bingen testified that she believed the man was intoxicated.

John Goelbecker, a consulting engineer retained by defendant as an accident reconstruction expert, testified that glare from the sun and the victim's dark clothing could have contributed to the accident. Goelbecker further testified that, based upon his examination of the scene a week after the accident and the estimated speed of the defendant's vehicle, the accident occurred in the right-hand lane of the roadway, not on the shoulder as determined by police.

■ On appeal, defendant first contends the circuit court erred in refusing supplemental *voir dire* of three specific prospective jurors regarding defendant's presumption of innocence, the State's burden of proof and that defendant's failure to testify could not be considered against him during deliberations. Defendant admits the circuit court questioned the prospective jurors as a group with respect to these legal issues, but erred in refusing specific supplemental questions to three prospective jurors by defense counsel on those legal principles. The relevant portions of *voir dire* are:

Prospective Juror Walkowitz:

"DEFENSE COUNSEL: *** [D]oes the offense that is charged of reckless homicide, does that affect your feeling about the presumption of innocence, that particular charge in and of itself?

ASSISTANT STATE'S ATTORNEY [(ASA)]: Judge, I will object to that.

THE COURT: Yes. Sir, is there anything about the nature of the charges that would affect your ability to be fair and impartial in this case?

PROSPECTIVE JUROR: No.

THE COURT: All right, you can ask that question. We are not going to get into specifics here. This is voir dire, please.

DEFENSE COUNSEL: Well, in regard to, sir, regarding the presumption of innocence. If Mr. Kraus—

ASA: We are getting into the legal aspects.

THE COURT: Yes, let's have a side bar. Bring the court reporter.

(WHEREUPON, a conversation was held out of the presence of the jurors in chambers.)

THE COURT: What led to the question that leads to the presumption of innocence?

DEFENSE COUNSEL: Well, with this potential juror, Judge, would that be affected by the fact that if Mr. Kraus did not testify—

THE COURT: I have already asked those questions. ***

*** I'm not going to allow you to ask every individual in this venire about presumption of innocence, reasonable doubt and DUI's and anything of that nature.

\* \* \*

They have answered the questions regarding the law. They have answered questions about presumption of innocence and they have answered questions about whether or not they would hold it against the Defendant if he testified and they have all answered appropriately.

\* \* \*

DEFENSE COUNSEL: Well, Judge, *** an individual might say yes I agree with the presumption of innocence but *** what *** if the Defendant didn't testify. All of a sudden if you put those two together, would you agree that that's a legitimate question to ask somebody?

THE COURT: No, I think that they have been asked that question, would they hold that against the Defendant in any way, shape or form if the Defendant chose not to testify.

They have all answered no. ***

\* \* \*

THE COURT: *** Counsel, you're mixing it up, [you've got] three different issues going at one time."

Prospective Juror Zachary:

"DEFENSE COUNSEL: *** Do you understand that you can't even speculate as to the reasons why [the defendant] wouldn't testify?

PROSPECTIVE JUROR: Yes, I do.

DEFENSE COUNSEL: Will you hold the State to that burden of proof?"

Prospective Juror Snedeker:

"DEFENSE COUNSEL: If the State fails to prove its case beyond a reasonable doubt.

ASA: (Interposing) Judge can we have a side bar?

THE COURT: What is your question, Counsel.

DEFENSE COUNSEL: I just want to ask her that she believes a verdict finding Mr. Krause not guilty would uphold the law just as—

THE COURT: (Interposing) I think I have covered that."

Supreme Court Rule 431 provides:

"a) The court shall conduct *voir dire* examination of prospective jurors by putting to them questions it thinks appropriate, touching upon their qualifications to serve as jurors in the case at trial. The court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate and *shall permit the parties to supplement the examination by such direct inquiry as the court deems proper for a reasonable period of time* depending upon the length of examination by the court, the complexity of the case, and the nature of the charges. Questions shall not directly or indirectly concern matters of law or instructions. The court shall acquaint prospective jurors with the general duties and responsibilities of jurors.

(b) If requested by the defendant, *the court* shall ask each potential juror, *individually or in a group*, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." (Emphasis added.) 177 Ill. 2d R. 431.

The committee comments to this rule provide:

"The new language is intended to ensure compliance with the requirements of *People v. Zehr*, 103 Ill. 2d 472 (1984). It seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law." 177 Ill. 2d R. 431, Committee Comments.

In *Zehr*, the defendant was charged with home invasion, burglary and aggravated battery. During jury selection, the defendant tendered the following three supplemental questions:

" '1. If at the close of all evidence and after you have heard arguments of counsel you believe that the State has failed to sustain the burden of proof and has failed to prove the defendant guilty beyond a reasonable doubt, would you have any hesitation whatsoever in returning a verdict of Not Guilty?

2. If the defendant, Mr. Zehr, decides not to testify in his own behalf, would you hold it against him?

3. Do you understand that the defendant is presumed innocent and does not have to offer any evidence in his own behalf, but must be proven guilty beyond a reasonable doubt by the State?' " *Zehr*, 103 Ill. 2d at 476, 469 N.E.2d at 1063-64.

The circuit court refused to include defendant's supplemental questions in its *voir dire* examination of the jury. On appeal, the Illinois Supreme Court held that "although they need not have been asked in precisely the form submitted, the subject matter of the questions should have been covered in the course of interrogation on *voir dire*." 103 Ill. 2d at 477, 469 N.E.2d at 1064.

■ Here, the circuit court questioned prospective jurors as a group regarding defendant's presumption of innocence, the State's burden of proof and that defendant's failure to testify could not be considered against him, and permitted defendant to question prospective jurors individually. This is all that Supreme Court Rule 431 requires. Supreme Court Rule 431 provides that "the court" shall ask each potential juror, "individually or in a group," about the legal principles at issue here (177 Ill. 2d R. 431(b)) and "shall" permit the parties to supplement that examination (177 Ill. 2d R. 431(a)). Supreme Court Rule 431 further provides that the parties' supplemental inquiry of prospective jurors shall be "as the court deems proper for a reasonable period of time" (177 Ill. 2d R. 431(a)). Thus, the circuit court's refusal to allow defense counsel to ask the precise supplemental questions defendant desired, mixing two or three concepts together, was not error. *People v. Zehr*, 103 Ill. 2d at 477, 469 N.E.2d at 1064 (questions need not be asked in precisely the form submitted). Although the spirit and purpose of the revision of the rule is to allow questioning of prospective jurors by counsel, the circuit court retains discretion over *voir dire* "as the court deems proper" to refuse questions that are redundant, as here, or improper. Accordingly, defendant's contention of error is without merit.

Next, defendant contends he was not proved guilty beyond a reasonable doubt of reckless homicide. More specifically, defendant

contends the State's evidence failed to prove that he drove his vehicle off the roadway or that he drove with utter disregard for the safety of other persons under conditions that were likely to cause death or great bodily harm to some individual.

■ When presented with a challenge to the sufficiency of the evidence, "the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis added.) *People v. Brooks*, 187 Ill. 2d 91, 132, 718 N.E.2d 88, 111 (1999). A criminal conviction will not be set aside on the grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there remains a reasonable doubt as to defendant's guilt. *People v. Tye*, 141 Ill. 2d 1, 13, 565 N.E.2d 931 (1990).

■ A person commits reckless homicide when, while driving a motor vehicle, he unintentionally kills an individual without lawful justification, if his acts are such as are likely to cause death or great bodily harm, and those acts are performed recklessly. 720 ILCS 5/9—3(a) (West 1996). Being under the influence of alcohol at the time of the incident resulting in death is *prima facie* evidence of a reckless act. 720 ILCS 5/9—3(b) (West 1996). A person is under the influence of alcohol if he is under the influence of alcohol to a degree that renders him incapable of driving safely. 720 ILCS 5/9—3(c)(2) (West 1996).

■ Defendant was charged with reckless homicide based upon his conduct of driving off the road and killing the victim while under the influence of alcohol. At trial, Officer Brewer testified as an accident reconstruction expert. Based upon his observations of the scene shortly after the accident, he concluded that the victim was riding on the gravel shoulder when defendant's car hit the rear wheel of the victim's bicycle, causing it to stop and skid across the gravel. Further, Officers Wagner and Bakken testified they spoke with defendant shortly after the accident and, based upon their observations of defendant's appearance and demeanor, they believed he was unfit to operate a motor vehicle at that time. According to their observations, defendant had glassy, bloodshot eyes, a strong odor of alcohol on his breath, and slurred speech, and he swayed while he spoke with them. Finally, defendant's blood-alcohol level was .047 grams of alcohol per deciliter some 5½ hours after the accident. An expert in toxicology and pharmacodynamics testified that, by using retrograde extrapolation, he determined that defendant's blood-alcohol concentration at the time of the accident was between .102 and .157. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reason-

able doubt. Defendant nevertheless argues that "a critical examination of [Officer Brewer's] testimony and the other evidence in the case fails to substantiate his crucial opinion about the precise location of the accident" and that proof of the precise location of the accident as the shoulder of the roadway is necessary to support his conviction. Defendant contends his expert provided "a much more coherent and common sense explanation for the lack of physical evidence to substantiate the State's theory of the case," namely, that the accident occurred on the pavement, not on the gravel shoulder. Even assuming, *arguendo*, that it was necessary for the State to prove the accident occurred on the shoulder rather than on the roadway in order to obtain a conviction, the trier of fact is charged with determining the credibility of witnesses, the weight to be given their testimony and other evidence, as well as reasonable inferences which may be drawn from the evidence, and resolving of any conflicts within that evidence. *People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317 (1989). The jury verdict indicates the jury believed the testimony of Officer Brewer over the testimony of defendant's expert regarding the location of the accident. Accordingly defendant's argument is without merit.

Next, defendant contends the circuit court erred in instructing the jury regarding the State's burden to prove defendant's blood-alcohol content beyond a reasonable doubt and the State's burden to prove defendant drove off the roadway.

At the jury instructions conference, the defendant tendered a version of Illinois Pattern Jury Instructions, Criminal, No. 23.30 (3d ed. 1992) (hereinafter IPI Criminal 3d), which included the words "beyond a reasonable doubt" in the third paragraph. That paragraph provides:

"If you find [beyond a reasonable doubt] that at time the defendant drove a vehicle that the amount of alcohol concentration in defendant's blood or breath was 0.10 percent or more, you may presume that the defendant was under the influence of alcohol. You are never required to make this presumption. It is for the jury to determine whether the presumption should be drawn. You should consider all of the evidence in determining whether the defendant was under the influence of alcohol."

The court rejected the defendant's tendered instruction in favor of the State's version of IPI Criminal 3d No. 23.30, which omitted the bracketed "beyond a reasonable doubt" language.

■ On appeal, defendant argues the circuit court's refusal to include the "beyond a reasonable doubt" language deprived him of due process of law. Defendant relies upon *People v. Hester*, 178 Ill. App. 3d 360, 376, 532 N.E.2d 1344 (1988), *rev'd on other grounds*, 131

Ill. 2d 91, 98, 544 N.E.2d 797, 800-01 (1989), in support. The circuit court's determination of the form in which an instruction is given will not be disturbed on review absent an abuse of discretion. *People v. Beck*, 295 Ill. App. 3d 1050, 1063, 693 N.E.2d 897 (1998); *People v. Curtis*, 262 Ill. App. 3d 876, 890, 635 N.E.2d 860 (1994).

In *Hester*, the defendant was charged with reckless homicide and driving a vehicle while under the influence of alcohol. The reckless homicide statute directed that, upon the jury finding that the concentration of alcohol on defendant's breath was 0.10 or more, the jury shall presume that the defendant committed a necessary element of the offense, *i.e.*, the defendant was under the influence of alcohol. Because this court perceived the statute as making the presumption "unequivocally mandatory" (*Hester*, 178 Ill. App. 3d at 375), we concluded that constitutional due process required the factual predicate of defendant's blood-alcohol level as 0.10 or more be proved "beyond a reasonable doubt" before the jury could rely on the presumption. The Illinois Supreme Court reversed, finding that the instruction was permissive rather than mandatory and that the instructions given to the jury, taken as a whole, correctly instructed the jury as to the State's burden of proof. *Hester*, 131 Ill. 2d at 101-02, 544 N.E.2d at 802. Thus, in *Hester*, the bracketed "beyond a reasonable doubt" language in the third paragraph of IPI Criminal 3d No. 23.30 need not have been included.

■ Here, the aggravated reckless homicide issues instruction, IPI Criminal 3d No. 7.10A (Supp. 1995), required the prosecution to prove defendant was under the influence of alcohol beyond a reasonable doubt. That instruction provides in relevant part:

> "To sustain the charge of aggravated reckless homicide, the State must prove the following propositions:
>
> * * *
>
> Fourth Proposition: *That the defendant was then under the influence of alcohol.*
>
> If you find from your consideration of all the evidence that *each one* of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that *any one* of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." (Emphasis added.) IPI Criminal 3d No. 7.10A (Supp. 1995).

Because the instructions given here to the jury, taken as a whole, properly instructed the jury regarding the State's burden of proof, defendant's argument is without merit. *Hester*, 131 Ill. 2d at 101-02, 544 N.E.2d at 802.

At the jury instructions conference, the State and defendant each

submitted a non-IPI instruction. The State's proffered non-IPI instruction provided, "If you find from your consideration of all the evidence that at the time of the alleged violation the defendant was under the influence of alcohol, you may presume this fact to be evidence of a reckless act. You are never required to make this presumption. It is for the jury to determine whether this presumption should be drawn." The defendant's proffered non-IPI instruction provided, "Proof that a person was driving while under the influence of alcohol is not alone sufficient to convict an individual of this offense, absent additional proof of other acts of reckless driving."

The circuit court refused to give either instruction, but allowed counsel to argue their differing interpretations of the law to the jury during closing argument.

After a period of deliberation, the jury sent out a question asking whether to sustain a conviction for the reckless homicide it was enough that defendant had been driving his vehicle while under the influence of alcohol, or whether the State also had to prove that he had driven off the roadway. Following a discussion with counsel, the circuit court advised the parties that it would now give the jury the State's non-IPI instruction coupled with a restatement of an earlier instruction that the State had made a material allegation that defendant drove off the roadway and that the State was required to prove all the material allegations beyond a reasonable doubt. The following discussion ensued:

"DEFENSE COUNSEL: My only other request of you would be that in conjunction with advising them that the State has proved this additional element that you read the words from the modified instruction that you refused at the same time you refused the State's non-IPI[.] Just the words that the person was driving under the influence of alcohol is not alone sufficient to convict an individual of this offense period. And then you tell them that you're going to tell them about the material allegation.

THE COURT: I would do that except I'm reading in conjunction with the other part they have to prove the material part of their allegation, so \*\*\* you're getting it twice.

If I read this paragraph and tell them about material allegation, it is the same thing twice. *You can either—*

DEFENSE COUNSEL: *I would rather you do it your way.*" (Emphasis added.)

Because defense counsel elected the court's method of instructing the jury over his own, the issue has been waived.

■ Next, defendant contends the jury was not properly instructed regarding the lesser included offense of leaving the scene of a personal injury accident. No person can be convicted of an offense that he or she has not been charged with committing. However, a defendant may

be convicted of an offense not expressly included in the charging instrument if that offense is a lesser included offense of the crime expressly charged. *People v. Jones*, 149 Ill. 2d 288, 292, 595 N.E.2d 1071, 1073 (1992); *People v. Lewis*, 83 Ill. 2d 296, 300, 415 N.E.2d 319, 320 (1980). Section 2—9 of the Criminal Code of 1961 defines an included offense in pertinent part as an offense that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2—9 (West 1998). In *People v. Novak*, 163 Ill. 2d 93, 643 N.E.2d 762 (1994), the Illinois Supreme Court adopted the charging instrument approach to determining what constitutes an included offense under the statute.

■ The charging instrument approach "looks to the facts alleged in the charging instrument in identifying a lesser included offense. Under this approach, an offense is deemed to be a lesser included offense if it is described by the charging instrument." *Novak*, 163 Ill. 2d at 107, 643 N.E.2d at 769. "The charging instrument approach does not require the lesser crime to be a theoretically or practically 'necessary' part of the greater crime. Rather, the lesser crime need only relate to the greater to the extent that the charging instrument describes the lesser. [Citation.] The 'lesser offense must have a broad foundation in the instrument charging the greater,' or at least 'set out the main outline of the lesser offense.' " *Novak*, 163 Ill. 2d at 107, 643 N.E.2d at 769-70.

The indictments against defendant read, verbatim:

"James Kraus committed the offense of reckless homicide in that he, unintentionally, without lawful justification, while driving a motor vehicle, a 1991 Buick Regal, recklessly performed acts in such a manner as were likely to cause death or great bodily harm to some individual to wit: while he was under the influence of alcohol to a degree that rendered him incapable of safely driving, he drove off the roadway, causing his motor vehicle to strike the bicycle ridden by Gerard Burke and such acts caused the death of Gerard Burke, in violation of Chapter 720, Act 5, Section 5/9—3(c)(2) of the Illinois Compiled Statutes 1992, as amended [(a Class 2 felony referred to by the parties and herein as 'aggravated reckless homicide')], and ***."

"James Kraus committed the offense of reckless homicide in that he, unintentionally, without lawful justification, while driving a motor vehicle, a 1991 Buick Regal, recklessly performed acts in such a manner as were likely to cause death or great bodily harm to some individual to wit: he drove off the roadway, causing his motor vehicle to strike the bicycle ridden by Gerard Burke and such acts caused the death of Gerard Burke, in violation of Chapter 720,

Act 5, Section 5/9—3(a)2 [*sic*, should be 5/9—3(a)] of the Illinois Compiled Statutes 1992, as amended [(a Class 3 felony referred to by the parties and herein as 'reckless homicide')]***."

■ A defendant has committed the offense of leaving the scene of a personal injury accident if (1) the defendant was the driver of a vehicle involved in a motor vehicle accident, (2) the motor vehicle accident resulted in a death or personal injury, (3) *the defendant knew an accident had occurred,* and (4) the defendant failed to immediately stop his vehicle at the scene of the accident and remain at the scene of the accident until he had performed the duty to give information and render aid. IPI Criminal 3d No. 23.06; 625 ILCS 5/11—401(a) (West 1992).

■ The indictments against the defendant did not describe the foundation or main outline of the offense of leaving the scene of a personal injury accident because defendant's knowledge of the accident or injury, and the fact that he left the scene, cannot be inferred from the allegations that he, while impaired by alcohol, drove his car off the roadway and hit the victim. Accordingly, the circuit court did not err in denying defendant's request to instruct the jury regarding the offense of leaving the scene of a personal injury accident.

■ Finally, defendant contends the circuit court erred when it denied his motion to vacate the verdict of reckless homicide as a violation of the one-act, one-crime rule. The record reveals that the circuit court merged the two convictions in its order of sentence and commitment to Cook County department of corrections and that it sentenced defendant only on the more serious offense. Because the circuit court merged the offenses and sentenced the defendant only for aggravated reckless homicide, there is no final judgment of conviction for reckless homicide. *People v. Flores,* 128 Ill. 2d 66, 95, 538 N.E.2d 481, 492 (1989); *People v. Caballero,* 102 Ill. 2d 23, 464 N.E.2d 223 (1984). Accordingly, the defendant's argument is without merit.

Affirmed.

BUCKLEY and GALLAGHER, JJ., concur.